The appellant in this case, Steve Tolbert, was convicted by a Mobile County jury of theft of property in the first degree and sentenced to twenty years' imprisonment.
Since a knowledge of the facts is relevant to some of the issues raised, we include the following summary of the State's evidence:
On August 6, 1981, Salesman Thomas Gebhart of Meyer Ford in Foley, Alabama, showed a Cougar automobile to a man who called himself "Berryhill" and a woman whom he identified as his wife. At trial, Gebhart identified this man as the appellant.
The three of them took a test drive in the car. Tolbert parked the vehicle in a lot near several stores, claiming he wanted to show the car to his brother who worked in one of the stores.
Because of the angle of the parked car, Gebhart was unable to see where Tolbert went, but he was gone ten or twelve minutes and he took the key to the Cougar with him.
After the three returned to the car lot, a written proposal was entered into for the purchase of the vehicle. Gebhart asked Tolbert for some identification, but Tolbert was unable to produce any. He gave the salesman an address in Loxley. Tolbert and his companion left the lot driving an old model Ford station wagon.
The next day it was discovered the Cougar had been stolen. There was evidence that someone had attempted to drive a vehicle around a chain suspended across the drive-out gate to the car lot and had gotten stuck in a ditch as a result. A quantity of broken glass was found near the scene and police authorities took samples of that glass.
When police officer John Davis of the Foley Police Department went to the Loxley address given by Tolbert, he found a Ford station wagon on the premises with a broken window. A sample of that window glass was taken. The inhabitants of the residence at the Loxley address were named Berryhill, and although the evidence was in conflict, it appears they were in some way related to appellant Tolbert.
On August 15, 1981, in Ventura County, California, Police Officer Kenneth Dobbe observed a man later identified as Tolbert pushing a stick through a broken rear window of a parked Cougar automobile. Tolbert told Dobbe that he had locked his keys in the car with the engine running and was *Page 807 
trying to operate the power window to get inside.
A check was run on the car tag and it was discovered that the car tag was not registered to the vehicle and that the vehicle had been stolen from Meyer Ford in Foley, Alabama.
Tolbert and another individual, who was on the scene with the appellant, were taken into custody.
Tolbert was interviewed by police on three occasions that day. Before the first interrogation at about 9:25, appellant was read his constitutional rights from a Miranda card. A tape recording was made of that exchange.
Appellant indicated that he understood his rights. He waived them and said he wanted to talk to the police about the charges against him.
During his first interview, Tolbert told the police he got the Cougar from a man named Berryhill, who was a boyfriend of his sister's in Texas. During the next interview, which took place about 12:35 that same day, Tolbert said the car had been sold to him by an employee of the Ford agency. Appellant's last statement was made at approximately 2:15 p.m. At that time, he told the police that the Cougar had been given to him so that he could leave the State for his own protection.
Officer Dobbe testified that the appellant seemed fully coherent when he made his statements, all of which were recorded on tape cassettes.
 I
Appellant first contends that the trial court committed reversible error by denying his motions to suppress the conflicting statements he made to California police officers. We find no merit in this contention.
The first time Tolbert was approached by a police officer, he was standing next to a car, pushing a stick through a broken rear window. Although Tolbert was asked several questions at that time, he was not suspected of committing any particular crime, nor was he in custody; thus, it was unnecessary to inform him of his constitutional rights. Miranda v. Arizona,384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
The testimony of Police Officer Kenneth Dobbe indicates that Tolbert was fully informed of his rights and that he waived those rights before his first custodial interrogation. Dobbe also indicated that Tolbert was in no way pressured or threatened in order to induce these statements; he was not misled in any way and he spoke of his own free will.
Approximately three hours elapsed between the first interrogation of Tolbert and the second. The last statement appellant made was at his own request and took place approximately ninety minutes after his second interrogation. In the interim between the statements, Tolbert was placed in a holding cell.
Appellant himself concedes in brief that he was read hisMiranda rights before his first interrogation at the police station. There is certainly no requirement that a suspect be informed of his constitutional rights before each separate interrogation. Love v. State, 372 So.2d 414 (Ala.Cr.App. 1979);Davis v. State, 401 So.2d 187 (Ala.Cr.App.), writ denied, Exparte Davis, 401 So.2d 190 (Ala. 1981).
The determination of whether or not Miranda warnings must be repeated is one that should be made on a case-by-case basis.Hollander v. State, 418 So.2d 970 (Ala.Cr.App. 1982).
In the case at bar, Tolbert was reminded before his second and third statements that he had already been informed of hisMiranda rights. He was asked if he remembered those rights, and he said that he did and that he wanted to talk to Officer Dobbe. Under these circumstances, we find that there was no necessity that appellant be re-informed of his constitutional rights and no error was committed by the trial judge when he denied the motions to suppress the statements. *Page 808 
 II
Appellant's assertion that the trial court erred to reversal in overruling his objection to the introduction of State's Exhibit 2 is meritless.
The exhibit in question was a carbon copy of a "proposal to buy" that was drawn up after Tolbert test drove the vehicle that was the subject of the theft. The carbon included the signatures of both parties.
Appellant claims that introduction of this instrument violated the best evidence rule since, he asserts, there was no accounting made for the absence of the original.
The rule in such cases has been stated as follows:
 "If the conduct of the parties to a bilateral writing shows that all of the parties intended that each of two or more duplicates of the writing should be the equal of each other, then each of such duplicates is an original. Consequently, any of such duplicates may be introduced without producing or accounting for the absence of the others. This is true even though one of the duplicate originals is a top-sheet . . . and the others are carbon copy duplicates. . . ." C. Gamble, McElroy's Alabama Evidence § 225.01 (2) (3d ed. 1977).
Witness Thomas Gebhart of Meyer Ford identified State's Exhibit 2 as the order that he prepared for Tolbert to take to the bank for a loan. He stated the exhibit was a "duplicate original" and he affirmed that that document was the only one of the orders he had in his possession when he turned it over to law enforcement officers in the case.
We find the evidence adduced at trial was sufficient to establish that State's Exhibit 2 was indeed a duplicate original, and thus, there was no necessity to account for the absence of the original. See also Richardson v. State,437 So.2d 645 (Ala.Cr.App. 1983).
 III
Appellant claims that the trial court erred in overruling an objection made to testimony given by Police Officer Parnell of the Foley Police Department. That testimony concerned a toxicologist's report that allegedly compared a sample of broken glass found near Meyer Ford and a sample taken from the broken window of a vehicle found on the Berryhill property. No toxicologist was ever called to testify about the alleged report at trial, nor was a copy of a toxicologist's report concerning the glass ever introduced into evidence.
The pertinent portion of the transcript reads as follows:
 "Q. And you said that you found glass out there on County Road 20?
"A. I did.
"Q. What did you do with that glass?
 "A. I put it in a white envelope and sealed it up and wrote the date on it that I found it and where. Then, I put it in the evidence room.
 "Q. Do you know now whether or not that glass came from that new vehicle?
 "MR. ORSO: And we object. Unless he knows from his own personal knowledge, he couldn't testify to that.
"BY MR. NORTON:
"Q. That's what I am asking you.
"A. I know, according to the toxicologist's report.
 "MR. ORSO: And I object. I don't know what's forthcoming with a question like that.
"THE COURT: Overrule the objection.
"BY MR. NORTON:
 "Q. Do you know whether or not it came from a new car or not?
"A. Not according to the toxicologist's report.
"MR. ORSO: And I object on the same grounds.
"THE COURT: Yes.
 "MR. NORTON: No further questions on that issue. Give me just a minute.
 "MR. ORSO: And I object and move to strike that last response.
 "THE COURT: Disregard that response, ladies and gentlemen. *Page 809 
 "MR. ORSO: We'd like for you to instruct the jury and I would like a further instruction as to why it should be disregarded because there is no way for me to cross-examine him.
 "THE COURT: Ladies and gentlemen of the jury, you are to disregard that because it is unreliable and he cannot cross-examine on it."
We agree with the State that the trial court's initial action of overruling appellant's objection was correct since Officer Parnell's testimony that "I know, according to the toxicologist's report" contained no improper evidence. We also find that the court's later instruction to the jury to disregard the officer's later comment concerning the contents of the report was sufficient to cure the error introduced by the response. See Ala. Digest, Criminal Law, Key No. 1169.5 (1), and cases cited therein.
 IV
The fourth issue appellant Tolbert raises on appeal is whether the evidence presented at trial was sufficient to sustain his conviction.
It is true that a large portion of the evidence was circumstantial. However, as we have said before, "Circumstantial evidence is in no wise considered inferior evidence and will sustain a conviction as stoutly as will direct evidence, provided it points to the guilt of the accused." Davis v. State, 418 So.2d 959 (Ala.Cr.App. 1982).
The evidence at trial showed that Tolbert went to Meyer Auto Sales and test drove the car shortly before it was stolen. At that time, Tolbert gave the salesman a false name and he refused to produce any identification when asked to do so. Only a few days later appellant was found in possession of the stolen vehicle in California. After his arrest, Tolbert gave the police three confusing and contradictory explanations about his connection with the car.
In the case of Bozeman v. State, 401 So.2d 167, 170
(Ala.Cr.App.), writ denied, 401 So.2d 171 (Ala. 1981), cert.denied, 454 U.S. 1058, 102 S.Ct. 606, 70 L.Ed.2d 595 (1981), this court reiterated the standard we must use:
 "In reviewing the sufficiency of circumstantial evidence, the test to be applied is `"whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. (Citations omitted)."' Dolvin v. State, 391 So.2d 133, 137 (Ala. 1980); Cumbo v. State, 368 So.2d 871, 874 (Ala.Cr.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979)."
We find that the evidence presented in the instant case was sufficient to sustain the verdict.
 V
Appellant's last argument challenges the trial court's denial of certain requested jury charges. Since no objection was made to this denial and no grounds were stated before the jury retired, we are left with nothing to review. Allen v. State,414 So.2d 989 (Ala.Cr.App. 1981), aff'd, Ex parte Allen,414 So.2d 993 (Ala. 1982).
We conclude that the judgment of the trial court is due to be affirmed.
AFFIRMED.
All the Judges concur. *Page 1085