The appellant, Donnie Gayle Holliday, was convicted of three counts of murder made capital because the murder occurred during the course of a kidnapping, a robbery, and a burglary. §§ 13A-5-40(a)(1), (2), and (4), Code of Alabama 1975.
The state's evidence tended to show that the body of the victim, Ms. Harless, was found by two hunters on the morning of November 10, 1989, floating facedown in a mud hole alongside a dirt road leading to Maxwell Swamp near Tuscaloosa, Alabama. Kenneth Warner, a state medical examiner, testified that he performed an autopsy on the victim's body and that the victim had died as a result of multiple blunt trauma injuries. Warner testified that the victim had suffered two black eyes, facial bruises and lacerations, head injuries, broken ribs, a severed spinal column, and a crushed liver. Warner further testified that the victim's injuries were consistent with being kicked or stomped and beaten with a soft drink bottle.
 I
The appellant initially contends that the trial court erred in denying his motion to suppress statements he made after his arrest. Specifically, he contends that his statements were not knowingly, intelligently, and voluntarily made because he was not advised of his Miranda[1] rights before making each statement.
A pre-trial suppression hearing was held concerning the admissibility of the statements. The record of that hearing reveals that the appellant was questioned by the police three times following his arrest at approximately 2:30 p.m. on November 10, 1989. Officer Dewayne Toxey of the Tuscaloosa Police Department testified that he transported the appellant from the scene of the arrest to the Tuscaloosa police department. He testified that he read the appellant hisMiranda rights once the appellant was inside his patrol car, and that the appellant stated that he understood these rights. The appellant arrived at the police station at approximately 3:15 p.m., and he was once again read his Miranda rights by Investigator John Steele of the Tuscaloosa County Sheriff's Department. Investigator Steele testified that the appellant executed a waiver *Page 327 
of rights form at that time, stating that he understood hisMiranda rights.
Captain Shirley Fields of the Tuscaloosa Police Department testified that around 6:45 p.m. on November 10, the appellant initiated a conversation with him. Captain Fields took a statement from the appellant at this time. He did not read the appellant his Miranda rights before taking the statement.
At approximately 7:30 p.m., on November 10, Captain Fields took a second statement from the appellant. Fields testified that before questioning the appellant he asked the appellant if he understood his rights and that the appellant responded that he did. During the questioning, the appellant informed Captain Fields that he wanted to have a lawyer present. The record indicates that Captain Fields continued questioning the appellant for a short while but that he stopped the questioning soon thereafter.
A third statement was taken from the appellant at approximately 10:30 p.m., November 10, after the appellant requested to speak with Investigator Robert Hayes of the Tuscaloosa Police Department. Investigator Hayes testified that he came to the homicide unit. Investigator Allen Fondren of the Tuscaloosa Police Department testified that before the appellant was allowed to speak with Hayes, he reminded the appellant that he had requested an attorney when he had last been questioned. He stated that the appellant responded that he understood that he was responsible for initiating the conversation with Investigator Hayes. Thereafter, Investigator Hayes spoke with the appellant. Hayes testified that he asked the appellant if he had been informed of his rights and if he understood his rights, and the appellant answered both questions in the affirmative. Investigator Hayes testified that the appellant told him that he did not kill the victim. Investigator Fondren testified that he then took a statement from the appellant after Investigator Hayes informed the appellant that he did not consider himself qualified to question a homicide suspect.
The trial court ruled that all the statements made by the appellant could be received into evidence except that portion of the one statement that had been taken after he had invoked his right to counsel.
All extrajudicial statements are presumed involuntary and inadmissible, and the State must prove voluntariness and also a Miranda predicate. Henderson v. State, 583 So.2d 276
(Ala.Cr.App. 1990), aff'd, 583 So.2d 305 (Ala. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1268, 117 L.Ed.2d 496 (1992). "Whether a waiver is voluntary, knowingly, and intelligently made depends upon the particular underlying facts and circumstances of each case, including the background, experience, and conduct of the accused — the totality of the circumstances." Magwood v. State, 494 So.2d 124, 135
(Ala.Cr.App. 1985), aff'd, 494 So.2d 154 (Ala.), cert. denied,479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986). Furthermore, there is no requirement that a suspect be informed of his constitutional rights before each interrogation in a series of interrogations. See C. Gamble, McElroy's AlabamaEvidence § 201.09 (4th ed. 1991). A determination of whetherMiranda warnings must be repeated should be made on a case-by-case basis. Magwood, supra; Tolbert v. State,450 So.2d 805 (Ala.Cr.App. 1984).
The record is clear that the appellant was advised of his rights under the United States Constitution, and that he had signed a written waiver of those rights a little more than three hours before making the 6:45 p.m. statement. Thus, the trial court did not err in denying the appellant's motion to suppress that particular statement. See Johnson v. State,584 So.2d 881 (Ala.Cr.App. 1991) (statements correctly received into evidence even though they were taken six hours after the appellant had been advised of his rights and no renewed Miranda
warnings had been given).
The trial court correctly suppressed the portions of the appellant's statement made at 7:30 p.m., November 10, after the appellant had invoked his right to counsel.
 "When a defendant makes an equivocal request for an attorney during a custodial interrogation, 'the scope of that interrogation is immediately narrowed to one subject and one only. Further questioning *Page 328 thereafter must be limited to clarifying that request until it is clarified.' Thompson v. Wainwright, 601 F.2d 768, 771 (5th Cir. 1979) (emphasis in original); Nash v. Estelle, 597 F.2d 513, 517 (5th Cir.) (en banc), cert. denied, 444 U.S. 981, 100 S.Ct. 485, 62 L.Ed.2d 409 (1979). 'Any statement taken by the state after the equivocal request for counsel is made, but before it is clarified as an effective waiver of counsel, violates Miranda.' Owen v. Alabama, 849 F.2d 536, 539 (11th Cir. 1988)."
Brown v. State, 630 So.2d 481, 484 (Ala.Cr.App. 1993).
The last statement the appellant contends that the trial court should have suppressed was made at approximately 10:30 p.m., November 10. The record shows that the statement was made over seven hours after the appellant had signed a waiver of hisMiranda rights. However, there is no requirement that a suspect be read his rights before each interrogation. McElroy's, § 201.09. According to police testimony, the appellant was asked if he had been read his rights and if he understood those rights, and he said that he had and that he did. Furthermore, before this statement, the appellant had invoked his right to counsel. The appellant was asked if he wanted to make a statement without an attorney, and he answered affirmatively. From the record we conclude that the appellant's statement was voluntarily, knowingly, and intelligently made.
Furthermore, it is a settled principle of law that the fact that the appellant had invoked his right to counsel does not mean that every statement made by the appellant after doing so will be inadmissible. United States v. Bosby, 675 F.2d 1174
(11th Cir. 1982). This proposition of law was first addressed in the landmark case of Edwards v. Arizona, 451 U.S. 477,101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), where the United States Supreme Court held that, "[A]n accused . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." Edwards v. Arizona,451 U.S. 477, 484-85, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981). InSmith v. Illinois, 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488
(1984), the United States Supreme Court followed this line of reasoning, holding that, "if the accused invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked." Smith v. Illinois, 469 U.S. at 95,105 S.Ct. at 492-93. See also Wyrick v. Fields, 459 U.S. 42, 46,103 S.Ct. 394, 395, 74 L.Ed.2d 214 (1982); Hamilton v. State,492 So.2d 331 (Ala.Cr.App. 1986).
 "[B]ut even if the conversation taking place after the accused has 'expressed his desire to deal with the police only through counsel,' is initiated by the accused, where reinterrogation follows, the burden remains upon the prosecution to show that subsequent events indicated a waiver of the Fifth Amendment right to have counsel present during the interrogation."
Oregon v. Bradshaw, 462 U.S. 1039, 1044, 103 S.Ct. 2830, 2834,77 L.Ed.2d 405 (1983).
From the record, it is apparent that after he had invoked his right to counsel in a prior custodial interrogation, the appellant requested to speak with Investigator Hayes. This court has held that, "[A] defendant's knowledge of or his assertion of his right to counsel may, under the totality of the circumstances, strongly evidence the fact that he knowingly waived counsel at a subsequent time." Johnson v. State,378 So.2d 1164, 1168 (Ala.Cr.App.), cert. quashed, 378 So.2d 1173
(Ala. 1979). See also Thompson v. State, 347 So.2d 1371
(Ala.Cr.App.), cert. denied, 347 So.2d 1377 (Ala. 1977), cert. denied, 434 U.S. 1018, 98 S.Ct. 740, 54 L.Ed.2d 765 (1978).
The appellant testified at trial. His testimony at trial was substantially the same information contained in his statement to the police before trial.
The trial court correctly found that the state had met its burden of proof that the appellant had voluntarily waived hisMiranda rights. *Page 329 
 II
The appellant contends that the trial court erred in denying his motion for a mistrial following questioning by the state's attorney regarding prior bad acts allegedly committed by the appellant.
The appellant testified that he had pleaded guilty[2] to the murder charges because his grandmother had influenced him to do so, and that he had pleaded guilty in the hope that he would not be sentenced to death. The state asked the following questions to show that he was not under his grandmother's influence:
 "Q [Prosecutor]: You said — But you and your grandmother, back on November 10th, when this happened, got along well. You were very close. Is that right?
"A [Appellant]: Yes
 "Q: Well, why do you suppose that she may have signed a warrant?
"A: In Northport?
"Q: For you. Yes, sir.
"A: Yes, sir. She did.
 "Q: Charging you with intent to cause physical injury to her, striking her several times on the head with [your] fist?
 "Mr. Turberville [Appellant's Counsel]: Your Honor, I object to this. Let's — unless he's been convicted of some crime, I don't believe that this is proper.
 "Mr. Freeman [Prosecutor]: Judge, I am not asking about any conviction of his.
"Mr. Turberville: Also, it is pure hearsay.
"Mr. Freeman: Well —
 "Q: Well, let me ask you if you recognize that signature right there?
 "Mr. Turberville: Your Honor, I ask for a mistrial. I think that the prejudicial effect of that far outweighs any probative value."
After an extensive colloquy with the attorneys outside the presence of the jury, the trial court sustained the appellant's objection but denied the appellant's motion for a mistrial. The trial court then gave a curative instruction to the jury and polled the jurors to ascertain that each one would be able to exclude the question and reach a verdict based on their deliberations.
 " 'A mistrial is a drastic remedy, to be used only sparingly and only to prevent manifest injustice, and the decision of whether to grant a motion for a mistrial rests within the sound discretion of the trial court. . . . Under certain circumstances prejudicial testimony may be eradicated by curative instructions by the trial court.' Ex parte Thomas, 625 So.2d 1156 (Ala. 1993) (mention of gang membership highly prejudicial requiring mistrial where objection to comment not sustained)."
McNair v. State, [Ms. CR-90-1556, August 13, 1993] 1993 WL 304478, *1, after remand, [Ms. CR-90-1556, September 30, 1993) 1993 WL 381487 (Ala.Cr.App. 1993). Furthermore, " '[T]here is a prima facie presumption against error when the trial court immediately charges the jury to disregard improper remarks or answers.' " McNair, ___ So.2d at ___, quoting, Desimer v.State, 535 So.2d 238, 242 (Ala.Cr.App. 1988). A trial judge is given broad discretion in determining whether a mistrial should be declared, because he is in the best position to observe what transpired, to determine its effect upon the jury, and to determine whether the mistrial should be granted. Smiley v.State, [Ms. CR-92-722, August 13, 1993] 1993 WL 304616 (Ala.Cr.App. 1993).
Under the facts presented by this case, we find no abuse of discretion in the court's denial of the appellant's motion for a mistrial.
For the foregoing reasons, the judgment in this cause is due to be affirmed.
AFFIRMED.
All the Judges concur.
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966).
[2] The appellant had originally pleaded guilty in this case and later withdrew his plea and proceeded to have a jury trial. *Page 330