[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 841 
Michael Shawn Barnes appeals from his conviction of capital murder and his sentence of death by electrocution in connection with the killing of Mr. John Cimprich in Saraland. The murder was made capital because it was committed in the course of a burglary in the first degree, see § 13A-5-40(a)(4), Ala. Code 1975. Barnes was found guilty as charged and, following a sentencing hearing, the jury returned an advisory verdict of life imprisonment without the possibility of parole. On December 12, 1995, the trial court conducted a final sentencing hearing in the instant case and in Barnes's unrelated capital murder convictions for the murder of Aileen Meinhart.[1] The trial court imposed a death sentence on each capital murder conviction.
Testimony at trial revealed the following. Cimprich was murdered in his Saraland home sometime on the evening of January 1, 1994, or during the morning of January 2, 1994. Darryl Wayne Loveless, Cimprich's neighbor, testified that sometime during the day of January 2, 1994, he noticed that Cimprich's car was missing from the driveway. Loveless went Cimprich's house and knocked on the door. When no one responded, Loveless entered the house and found Cimprich's body lying on the kitchen floor. Police investigatiors found evidence that Cimprich had been killed during a burglary. An autopsy performed on Cimprich revealed that his death was caused by multiple "chop" wounds to the head and neck. The wounds were determined to be consistent with blows from an ax found at the crime scene.
Shortly after the discovery of Cimprich's body, police received reports that an automobile resembling his had been seen stuck in some mud by the side of Highway 98 near Saraland. Tire marks, footprints, and a piece of rope were found where the automobile had reportedly been stuck. The automobile was eventually found approximately 15 miles from that location. A piece of rope similar to the one found near Highway 98 was tied to the bumper of the automobile.
Barnes was arrested after police received information that he had been seen driving Cimprich's car on the night of the killing and he had told friends he had acquired some money. Fingerprints taken from Cimprich's car matched Barnes's, and footprints taken from Cimprich's house and area off of Highway 98 where the car had been reported to be stuck to be were determined to be consistent with shoes Barnes was wearing at the time of his arrest.
Upon his arrest, Barnes told police that he went to Cimprich's house on the night of the murder with a friend, Jason Galloway. Barnes admitted that he entered the house through a window over the kitchen sink where a footprint matching Barnes's shoe was subsequently found and he admitted driving Cimprich's automobile after leaving the house. Barnes told police that Galloway remained in Cimprich's house for a short time after Barnes went outside. Barnes told police that he heard "hollering" inside the house before Galloway came out carrying a bloody ax. Barnes denied any involvement in the murder attributing the killing to Galloway
All efforts by the police to locate Jason Galloway were unsuccessful. Several of Barnes's friends told investigators that they had never heard of a person named Jason Galloway. No evidence was presented at trial to substitute Barnes's claim that someone named Galloway murdered Cimprich. The State maintained throughout the trial that Galloway did not exist.
 GUIIT PHASE I.
Barnes argues that the trial court committed reversible error in admitting into evidence *Page 842 
statements he made to law enforcement personnel following his arrest. Barnes alleges that the statements were improperly admitted because he was detained at the Saraland Police Department for approximately 11 hours before being transported to a youth detention facility. detaining him for 11 hours, he says, was a violation of the statute that requires that juveniles be transferred to a youth detention facility "with all possible speed" following their arrest, § 12-15-58(a), Ala. Code 1975. Barnes additionally alleges that the statements made to law enforcement officers after he was read his juvenile rights as dictated by Miranda v. Arizona 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966), and Rule 11(B), Ala. R. Juv.P., were involuntary, because, he says, he was unable to understand his rights and because, he says, police officers failed to act on his request to speak to his mother.
Barnes raised identical arguments to this Court in an appeal from a conviction for capital murder in connection with the killing of Aileen Meinhardt. See Barnes v. State, 704 So.2d 487
(Ala.Cr.App. 1997) (see Part I of that opinion). In that case, we determined that the trial court did not err in allowing Barnes's statements to law enforcement officers into evidence because the detention was not unreasonably long and because the statements were not involuntary. Barnes's statements in the instant case were made at the Saraland police station at the same time and pursuant to the same procedure as the statements relating to the murder of Aileen Meinhardt. In light of our resolution of this issue in the case involving Meinhardt, we hold that the trial court did not err in allowing into evidence Barnes's statements to law enforcement officers into evidence.
 II.
Barnes alleges that the trial court erred in failing to declare a mistrial or to give a curative instruction after a Witness referred to active warrants on Barnes for burglary which existed at the time of his arrest. Barnes alleges that he was unduly prejudiced by the comment and that he was entitled to a mistrial. We disagree.
The following exchange took place during the State's direct examination of Lieutenant Elvin French of the Saraland Police Department:
 "Q [By the State]: Did you become — did you meet with a person by the name of Cliff Peterson on January 4, 1994?
"A [French]: Yes, ma'am.
"Q: And what was the purpose of that meeting?
 "A: Through Officer Brown, who was with me, he was the contact officer. And we had information that we could — or had located Michael Barnes, who was — we had active warrants on for burglary at that time.
"Q: What was — where did you go?
"A: We went —
 "MR. MADDEN [defense counsel]: Judge, can we approach the bench for a moment?
 "THE COURT: Is this something that needs to be on the record?
"MR. MADDEN: Yes, sir.
"MR. ARMSTRONG [defense counsel]: Yes, sir.
 "(A bench conference was held, during which the following occurred)
 "MR. MADDEN: This witness has testified about active warrants for burglary, completely unsolicited about other crimes, evidence that is inadmissible and other witnesses were instructed not to go into other crimes or offenses. We move for a mistrial.
 "THE COURT: I'll just have to deal with it after we break."
(R. 349-50.)
The record reflects that Barnes did not raise the matter after the break and that the trial court never ruled on Barnes's motion for a mistrial. Because Barnes failed to obtain an adverse ruling on his motion, our review of this issue will be pursuant to the plain error standard. See Rule 45A, Ala. R.App. P. Travis v.State, [Ms. CR-92-958, April 18, 1997] ___ So.2d ___ (Ala.Cr.App. 1997).
 "In United States v. Young 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), the Supreme Court stated that the plain error *Page 843 
doctrine should be used to correct only `particularly egregions errors' . . . which are those errors that `seriously affect the fairness, integrity or public reputation of judicial proceedings' . . . . The plain error rule should be applied `solely in those circumstances in which, a miscarriage of justice would otherwise result.' Young, supra, at 15, 105 S.Ct., at 1047. . . .
 "Furthermore, the court noted that the plain error doctrine requires that the `claimed error not only seriously affects "substantial rights" [of the defendant], but that it has had an unfair prejudicial impact on the jury's deliberations. Only then would [a] court be able to conclude that the error undermined the fairness of the trial and contributed to a miscarriage of justice.' Young, supra, at 16, n. 14, 105 S.Ct. at 1047, n. 14."
Hooks v. State, 534 So.2d 329, 351-52 (Ala.Cr.App. 1987), aff'd,534 So.2d 371 (Ala. 1988), cert. denied, 488 U.S. 1050,109 S.Ct. 883, 102 L.Ed.2d 1005 (1989).
A mistrial implies a miscarriage of justice and is such a serious matter that a motion for a mistrial should be granted only where there has been a fundamental error. Floyd v. State,412 So.2d 826 (Ala.Cr.App 1981). "A trial judge is given broad discretion in determining whether a mistrial should be declared, because he is in the best position to observe what transpired, to determine its effect upon the, jury, and to determine whether the mistrial should be granted." Holliday v. State, 641 So.2d 325,329 (Ala.Cr.App. 1994).
Our review of the record leads us to conclude that French's testimony did not rise to the level of plain error. French's reference to the arrest warrants was unsolicited and was merely an attempt to explain rest. This Court has found that "`and indirect reference to the defendant's involvement in other crimes is not incurably harmful to the accused, and any possible prejudice may be eradicated by the trial judge's prompt curative instruction to the jury.'" McDonald v. State, 516 So.2d 868, 871
(Ala.Cr.App. 1987) (quoting Brooks v. State, 462 So.2d 758, 760
(Ala.Cr.App. 1984)). While no curtive instruction was given in the instant case, we note that the defense did not request a curative instruction.
This Court found in Dill v. State, 600 So.2d 343 (Ala.Cr.App. 1991), aff'd, 600 So.2d 372 (Ala. 1992); cert. denied,507 U.S. 924, 113 S.Ct. 1293, 122 L.Ed.2d 684 (1993), that a defendant was not so prejudiced that it amounted to plain error where a witness referred to the fact that a defendant had a parole officer. InDill, the defense refused a proposed curative instruction and no curative instruction was given.
The State argues that French's comment was so nonspecific that the jury could have assumed the outstanding warrants to be associated with the Cimprich burglary. However, because French indicated that more than one warrant was outstanding for Barnes, his comments indicated, at the least, that Barnes may have been suspected in the burglary of Cimprich's house and in an additional burglary. This improper reference could easily have been corrected by a curative instruction; however, Barnes did not request one. Although the comment was improper, the trial court's refusal to grant the motion for a mistrial still did not rise to the level of plain error.
Viewing the record in its entirety, we cannot characterize the reference to the outstanding burglary warrants as a miscarriage of justice. The jury was well aware at the time of French's comment that Barnes was charged with capital murder for the intentional murder of Cimprich during the course of burglarizing his home. In statements given to police after his arrest, Barnes admitted burglarizing Cimprich's home, but denied any participation in the murder. His defense at trial was essentially that he was only a burglar — not a murderer. We cannot conclude that the unsolicited comment, which described the circumstances surrounding Barnes's arrest, prejudiced him to the point of plain error, especially in light of the fact that the defense did not request a curative instruction in lieu of its motion for a mistrial.
The trial court committed no plain error when it failed to declare a mistrial based on French's unsolicited comment. *Page 844 
 III.
Barnes argues that the trial court erred in failing to sanction the State for an alleged discovery violation. Following testimony by one of the State's witnesses, Detective James Cooper, Barnes alleged that the State had failed to disclose to him the substance of statements Barnes had made to the police. Cooper testified as follows:
 "Q [by the State]: Besides Jason's age, did Michael Barnes tell you anything else about how to find Jason Galloway?
"A [Detective Cooper]: Yes.
"Q: What did he tell you?
 "A: He said that he was wanted by Mobile and that he lived close to the train."
(R. 306-07.) Barnes maintained at, trial that the state had not disclosed to the defense any evidence that he had made this statement. The State maintained that, the defense was provided a copy of the audiotaped statement that contained this statement. Barnes then stated that he would not object to Cooper's testimony if the information was on the tape. The trial court never ruled on Barnes's motion. He argues on appeal that the trial court's allowing Cooper's testimony into evidence deprived him of a fair trial. We find his argument without merit.
Again, because Barnes failed to obtain an adverse ruling from the trial court on his motion, our review of this issue pursuant to the plain error rule. Travis v. State, [Ms. CR-92-958, April 18, 1997] ___ So.2d ___ (Ala.Cr.App. 1997). Whether and to what extent a trial court imposes sanctions for non-compliance with Rule 16, ala.R.Crim.P., rests "within the sound discretion of the court." McCrory v. State, 505 So.2d 1272, 1279 (Ala.Cr.App. 1986). Rule 16.1(a)(1), Ala. R.Crim. P., provides that, upon a defendant's written request, a proposecutor must permit the defendant to inspect and copy any written or recorded statements made by the defendant to law enforcement officers by the defendant be disclosed to the defense upon the defendant's request. Barriers pretrial discovery request sought information discoverable under both subsections of Rule 16.1(a)(1) and (2).
A review of the record and an examination of the exhibits offered at trial reveal that the State had provided Barnes with an audiotape of one of his statements to police investigators. The tape was introduced into evidence as State's Exhibit 104. Agent John Reid of the Alabama Bureau of Investigation testified that the tape was recorded shortly after Barnes's arrest and in Reid's presence and the presence of Officer Tim Landrum of the Sarahland Police Department, and Detective Cooper, whose testimony is the subject of Barnes's argument. The audiotaped statement contains the following:
"Agent Reid: Oh. Have you seen Mr. Galloway v since?
 "Michael Barnes: . . . He said something about he was fixing to leave and go somewhere in . . . what's the name of that? You go down Moffat Road and pass Semmes then you pass Wilmer or something like that. He said he was going to be located in Georgetown at a friend's house and get out of the Mobile. That's what he told me Sunday because the problems that he have been into in Mobile about a friend of his that's been been up and hurt and looking for him . . . so he is charged for that or something like that. . . ."
(State's Exhibit 104.)
Barnes has failed to show that the state violated any provision of Rule 16.1, Ala. R.Crim. P. Even if Barnes had revealed this information to Cooper at a time different from when the taped statement was given, Barnes could not have suffered any prejudice from Cooper's testimony.
Because state's Exihibit 104 contained the same information to which Cooper testified, Cooper's testimony could not have prejudiced the defense even if the Barnes had made another similar statement to Cooper that had not, in fact, been disclosed.
The prosecution did not violate Rule 16.1, Ala.R.Crim. P.; therefore, the trial court did not commit plain error in failing to sanction the prosecution. *Page 845 
 IV.
Pursuant to Rule 45A, Ala. R.App. P., this Court has searched the record for any plain error or defects in the proceedings against; Barnes. We have found no error that rose to the level of plain error in the guilt phase of Barnes's trial. Accordingly, Barnes's conviction for capital murder in this case is due to be, and it is hereby, affirmed.
 SENTENCING PHASE V.
Barnes raises two arguments alleging error in the sentencing phase of his trial. Because we are remanding this case for resentencing in light of this Court's reversal of Barnes's two capital murder convictions in connection with the murder of Aileen Meinhardt, we need not address these issues.
After a sentencing hearing, the jury, by a vote of 9-3, returned an advisory verdict, recommending that Barnes be sentenced to life imprisonment without the possibility of parole. The trial court rejected the jury's advisory verdict and sentenced Barnes to death by electrocution.
In its sentencing order, the trial court found that three aggravating circumstances existed. On of the aggravating circumstances was that Barnes had been previously convicted of another capital offense or of a felony involving the use or threat of violence pursuant to § 13A-5-49(2), Ala Code 1975. Our reversal today of Barnes's convictions with regard to the murder of Aileen Meinhardt has removed the basis for the finding of this aggravation circumstance proper.
Additionally we find that our reversal of Barnes's conviction in the Meinhardt cases has removed the basis for the trial court's rejection of a related statutory mitigating circumstance. The sentencing order stated that Barnes "had a significant history of prior criminal activity within the meaning of the Code of Alabama, Section 13A-5-51(1). Therefore this mitigating circumstance does not exist and is not considered." (C.R.223.) The trial record and Barnes's presentence report, reflect that, other than the Meinhardt conviction, his criminal record consisted of only juvenile adjudications.
This Court addressed the issue whether juvenile adjudications could be considered for this purpose in Freeman v. State,651 So.2d 576 (Ala.Cr.App. 1994) (where the presentence) report contained no adult criminal record):
 "The trial court, in rejecting the mitigating circumstance under § 13A-5-51(1) and in finding that the appellant had a significant history of prior criminal activity, obviously based its finding on the appellant's juvenile record. To do so was error. Only convictions can negate the statutory mitigating circumstance of no significant history of prior criminal activity."
Freeman, 651 So.2d at 597-98. Again, the reversal of the convictions on which the trial court apparently based its findings has made the trial court's failure to find the existence of this mitigating circumstance improper.
In the present case, the trial court overrode a jury's recommendation of life imprisonment without parole, where 9 jurors voted for life imprisonment without parole and 3 jurors voted for death by electrocution. The trial court in sentencing Barnes weighed the existence of three aggravating circumstances against one mitigating factor and determined that Barnes should be sentenced to death.
The circumstances surrounding the sentencing portion of this appeal are unusual in that the relationship between Barnes's conviction in the instant case and his convictions in the Meinhardt case were so intertwined. The two trials were held literally weeks apart and the trial court pronounced sentence for all three capital murder convictions on the same day.[2] The oral arguments on appeal for both trials were consolidated. The two *Page 846 
cases even share an identical issue regarding the admissibility of Barnes's statements to law enforcement officers.
The reversal of Barnes's convictions in the murder of Meinhardt, which preceded his conviction in the instant case, demonstrates the close relationship between the appeals in the two cases, particularly with regard to the sentencing phase of trial. In light of these unusual circumstances and the effect of the reversals in the Meinhardt case on this case, we hold that this cause is due to be remanded to the trial court with instructions to make new findings as to the aggravating and mitigating circumstances and to reevaluate Barnes's sentence. SeeHenderson v. State, 616 So.2d 351 (Ala.Cr.App. 1992) (remanding a case for resentencing where the trial court failed to find existence of three mitigating circumstances); Hadley v. State,575 So.2d 145 (Ala.Cr.App. 1990) (remanding case for resentencing where the trial court improperly found the existence of one aggravating circumstance and improperly found one mitigating circumstance not to exist). The trial court is further instructed to resentence Barnes and, thereafter, to submit an order satisfying the requirements of § 13A-5-47(d) and 13A-5-47(e), Ala. Code 1975, and including its findings of fact and conclusions to this Court within 90 days. Because the trial court overrode the jury's recommended sentence of life in prison without the possibility of parole, it will not be necessary to conduct another sentencing phase hearing before the jury. Nor will it be necessary for the court to consider additional evidence or argument from the parties.
AFFIRMED AS TO THE CONVICTION; REMANDED WITH INSTRUCTIONS AS TO SENTENCING.
All the Judges concur.*
[1] See Barnes v. State, 704 So.2d 487 (Ala.Cr.App. 1997).
[2] We not that the trial court's sentencing order states as an aggravating circumstance the court's finding that Cimprich's murder was committed in the course of a rape and burglary. It is apparant that the trial court was mistakenly referencing the Meinhardt murder.
* Judge Jean Brown and Judge Pamela Baschab were not members of this court when the oral argument was held. They have listened to tapes of that argument.
 On Return to Remand
On September 5, 1995, we remanded this case, in which the death penalty had been imposed to the trial court. In our opinion remanding the case for resenting, we ordered the trial court to reweigh the aggravating and mitigating circumstances because the trial court's original findings of aggrevating and mitigating circumstances were necessarily changed by our reversal of another capital murder conviction against the appellant. Barnes v. State,704 So.2d 487 (Ala.Cr.App. 1997).
On July 12, 1998, the trial court resentenced Barnes to life imprisonment without parole. Based on the evidence presented at trial and at sentencing, we find the appellant's sentence of life imprisonment without parole to be proper.
AFFIRMED AS TO SENTENCING.
LONG, P.J., and McMILLAN, BROWN, and BASCHAB, JJ., concur.