IN

# THE SUPREME COURT

## OF ALABAMA.

$\begin{vmatrix} 52 & 299 \\ 137 & 47 \end{vmatrix}$

---

## JUNE TERM, 1875.

---

### Wilson *v.* The State.

#### *Indictment for Illegal Voting.*

1. *City court of Mobile ; power to hold special terms.* — The city court of Mobile has authority to hold, by special adjournment, such terms as may be necessary for the dispatch of business, and at such special term may exercise its full criminal jurisdiction, including the origination of a grand jury, if, in its judgment, the public good requires it.

2. *Indictment for illegal voting ; what sufficient.* — An indictment, under the "Act to regulate elections in the State of Alabama," approved April 23, 1873, charging the defendant with having "voted more than one time" at a general election, held on a given day, in a particular county, is not demurrable because it fails to allege the names of the persons or officers for whom the defendant voted, nor subject to demurrer on other grounds.

3. *Witness ; putting under rule.* — An order putting witnesses under the rule is discretionary with the court, but should seldom, if ever, be refused when applied for. It is in the discretion of the court to permit or refuse the examination of a witness who violates the rule, and the exercise of this discretion is not revisable ; but a witness should not be excluded merely because he has heard the reading of the indictment or pleadings.

4. *Vote ; what best evidence of.* — The poll-lists are the highest and best evidence of who voted at an election ; and when it does not appear from them that the defendant voted in his real name, or in the name by which he is indicted, or that there is a name on the poll-list representing the ballot cast by him, there can be no conviction for illegal voting.

APPEAL from City Court of Mobile.

Tried before Hon. O. J. SEMMES.

The opinion states the case.

ALEXANDER McKINSTRY, for appellant, cited the acts creating the court, and from time to time enlarging its jurisdiction, and contended that under them the court had no power

[Wilson v. State.]

to originate a grand jury at a special term. · *O'Byrne* v. *State,* in MS.

II. All the counts of the indictment were obnoxious to the grounds of demurrer assigned. 6 Ala. 664 ; 15 Ala. 259 ; 29 Ala. 27; 1 Arch. Crim. Law, § 68. No form of indictment being given, the offence should be described with the certainty requisite at common law. 18 Ala. 535 ; 24 Ala. 672 ; 33 Ala. 398 ; Rev. Code, § 4120. It was uncertain as to whom the defendant voted for ; whether twice for one officer, or for two persons for the same office. 4 R. I. 269 ; 9 Miss. 417 ; 7 Met. 52.

III. The charge given, as to the non-production of the poll-list, was erroneous. Under the election law sworn officers are required to make a *record* of the ballots cast. That was the highest and best evidence of defendant's having voted. Until its loss or destruction was shown, it could not be proved *aliunde* that defendant had voted. 2 Stewart & Porter, 348.

JOHN W. A. SANFORD, Attorney General, with whom were T. N. McCARTNEY and GAYLORD B. CLARK, *contra.* — I. The court had undoubted power to summon a grand jury, if deemed advisable. *Levy* v. *State,* 48 Ala. 171 ; *Nugent* v. *State,* 19 Ala. 540.

II. The indictment was sufficient. Several of the counts are in the exact language of the statute and charge all the constituents of the offence. *State* v. *Boyington,* 56 Maine, 512 ; 15 Iowa, 123 ; 1 Bish. Crim. Proc. §§ 267–8. The term " vote " *ex vi termini* shows that the accused expressed his mind, his will, or choice for an office which was to be filled ; it was needless to charge that the ballot was cast wilfully, corruptly, &c.

III. The statute construed in 2 Stewart & Porter, 348, is unlike the present law. The election law itself only makes the poll-list evidence in the case of a contested election. The office of manager was of higher dignity under the old statute than under the new. Under the old law the duties of the managers were in their nature judicial, and this fact influenced the decision in 2 Stewart & Porter.

BRICKELL, C. J. — The city court of Mobile was originally established as a criminal court only, having in Mobile county jurisdiction concurrent with the circuit court, " in the administration of the criminal law." Pamph. Acts 1845–46, p. 29, § 4. It was authorized at stated times to hold three regular terms annually, and by *special adjournment,* " such other terms as may be necessary for dispatch of business." Ib. 53. The times of holding the regular terms were, from time to time,

changed by legislative enactments, and civil jurisdiction, except in actions involving the title to lands, was conferred on it. Pamph Acts 1849–50, p. 36, § 43; Acts 1851–52, p. 75, § 1. In 1858, it was invested with authority to hold special terms by order of the judge, when necessary for the trial of criminal causes, and to deliver the jail of all persons charged with crimes and misdemeanors. Pamph. Acts 1857–58, p. 57, § 3. In 1868, it was divested of civil jurisdiction, and remitted to its original criminal jurisdiction. Pamph. Acts 1868, p. 413, No. 56. Its civil jurisdiction was restored by the act of 1872. Pamph. Acts 1871–72, p. 109, No. 78. It is apparent from a careful examination of the several statutes, that neither by implication or express provision has the authority of the court, to hold by special adjournment such terms as may be necessary for the dispatch of business, been taken away or impaired. The power remains to be exercised by the court, whenever in a sound discretion the public good requires its exercise. The term of the court, held on the 18th November, 1874, entitled a *special adjourned term*, at which the indictment was found against appellant, was held under an order made in term time, and of consequence was an authorized term of court. At such term, the full criminal jurisdiction of the court could be exercised. Whatever power it could properly exercise at a regular term (by which is intended only a term commencing at the time fixed by law), could be exercised at this adjourned term. *Nugent* v. *State*, 19 Ala. 540; *Harrington* v. *State*, 36 Ala. 236. At such a term, the court has power to originate a grand jury, if the public good requires it. R. C. § 4085. *Nugent* v. *State*, supra; *Harrington* v. *State*, supra; *Levy* v. *State*, 48 Ala. 171. The grand jury presenting the indictment against appellant was not of consequence summoned and empanelled without warrant of law, as is here insisted, but was a legal body, a lawful constituent of the court, charged with the power it exercised. The case of *O'Byrne* v. *State* (January term, 1874) is not at all inconsistent with this opinion. In that case, a grand jury for a regular term of the court had been drawn and summoned in the mode prescribed by law, and so far as the record disclosed, were *probi et legales homines;* yet, the judge of the city court on a fact resting in parol, of which he could not have judicial knowledge, assumed to set aside the panel, because particular individuals on it had, in his judgment, disqualified themselves from sitting to inquire as to a particular offence, which he supposed the jury could be called to investigate. There was no other term which was descriptive of the judge's action than usurpation. Usurping the power to set aside the panel, the administration of the criminal law must have been superseded, or he must usurp the power of originating a grand jury. This

[Wilson v. State.]

power is intrusted by our law to the court only in clearly defined cases. Of these cases is the organization of a grand jury at a special term, if the public good requires it. R. C. § 4085. This is the power the city court exercises. The necessity for its exercise was not created by an unwarrantable action of the court, but sprung from public necessity.

The 40th section of the act of April 22d, 1873, entitled " An act to regulate elections in the State of Alabama," declares, " that any person voting more than once at any election held in this State, or depositing more than one ballot for the same office as his vote at such election, or is guilty of any other kind of illegal or fraudulent voting, shall be deemed guilty of a felony," &c. Pamph. Acts 1872–73, p. 25. The 30th section declares that at all elections the elector must vote by ballot, and the 31st section, that the ballot must be a white paper ticket, on which must be written or printed, or partly written or partly printed, the names for whom the elector intends to vote, and must designate the office for which each person so named is intended by him to be chosen." Ib. 23.

The indictment contains three counts. The first charges the appellant with having voted *more than one time* at the last general election. The second charges that at this election, having voted by ballot, once at the sixth ward polls in the city of Mobile, he voted a second time, by ballot, at the seventh ward polls in said city. The third charges that he voted more than once, at said election, by ballot, voting one time at the sixth, and one time at the seventh ward in said city. The difference in the counts is, that the first is a general charge of voting more than once, without naming the places at which the votes were cast, and how cast, whether by ballot or otherwise. The second is more specific, averring the voting was by ballot, and that the first vote was cast at one polling place and the second at another. The third count varies from the second in omitting the order in which the two votes were cast. To each count a demurrer was interposed, and the cause assigned is, that the offence is not described with sufficient certainty, nor the persons or offices for which the votes were given. The demurrer was overruled.

The offence denounced by the statute, and intended to be described in the indictment, is voting more than once. An indictment for a statutory offence is generally sufficient, when it is framed in or pursues the words of the statute. The exception is, if thereby the fact, in the doing or omission of which the offence consists, is not directly and explicitly averred. Voting more than once, at an election held in this State, is the fact constituting the offence. The times of holding the general elections are prescribed by law, and are judicially known. When the indictment charges that at a general election held at

a particular time, the defendant voted more than once, the court can from the averment determine whether it was a general election, held under authority of law, and knows what officers were to be chosen, and what officers were of necessity voted for. The averment that he voted includes in itself the fact that the vote was by ballot, for in no other way could he have voted, and proof of voting in that way is indispensable to satisfy the averment. We therefore conclude that pursuing the words of the statute as the indictment does, it is sufficient. It was not necessary, if it had been possible, to aver for whom the appellant voted. The presumption from his voting is, that the ballot designated for whom he voted; if it did not and was a blank, or designated particular persons as voted for to fill offices, not to be filled at the election, so that the double voting did not affect the result of the election, this was matter of defence, to be introduced by the defendant in exculpation. *State* v. *Minnick*, 15 Iowa, 123 ; *State* v. *Boyington*, 56 Maine, 512. One of the reasons for requiring a vote to be given by ballot, rather than *viva voce*, is the privacy attending it. The elector is not to be subjected to the necessity of making public for whom he votes. Thereby he is supposed to be left freer and more independent in the exercise of his high privilege. Against any invasion of the privacy of the ballot the law diligently guards. It is only when it may be necessary for the prevention of fraud, or the induction into office of one not really elected by the qualified voters, that an inspection of the ballot can be had. It would not be in accordance with the policy of the ballot system to require that an indictment for illegal voting should aver for whom the vote was cast, or that proof of the fact should be made by the State. It is not the fact for whom 'he voted, but that he voted more than once, that constitutes the offence. He may have voted once for each of the opposing candidates, and thereby, as to the result of the election, have rendered the votes blanks, and yet he would be guilty because the letter and spirit of the law would be violated. The purity of the ballot-box would be endangered, and elections subjected to the hazards of being thwarted by fraudulent conduct of the electors.

Putting witnesses under the rule, or examining them out of the hearing of each other, is not a matter of right in parties, but rests in the sound discretion of the court. The order for such examination may be made by the court of its own motion, if deemed essential to the discovery of the truth, and should rarely if ever be withheld, when moved for by either party. If the rule is made, and a witness remains in court in violation of it, intentionally or by mistake, it is discretionary with the court to permit or refuse his examination, and the exercise of

the discretion is not revisable. 1 Green. Ev. § 432; *State* v. *Brookshire*, 2 Ala. 303. If the witness Calhoun had been within the rule, we could not revise the action of the court in permitting his examination. He was not, however, within the rule. He had not heard any of the evidence introduced on the trial, and the rule does not contemplate the exclusion of a witness because he may have heard the reading of the indictment or other pleading in the cause.

The statute required that three inspectors should be appointed to attend and conduct an election, at each precinct or ballot-box, and the appointment of two clerks. When a vote was cast, one of the inspectors must have received it, and distinctly and audibly called the name of the voter, which the clerks were required to enter on separate lists called "poll-lists," and the ballot numbered with the number corresponding to the number of the voter's name on the "poll-lists." Pamph. Acts 1872–3, p. 21, § 26; p. 21, §§ 32, 33. The poll-lists of the seventh ward were not introduced by the State, but by the defendant, and his name did not appear upon them. Neither the inspectors nor clerks of either of the polling places, at which it is alleged the defendant voted, were introduced as witnesses; but the State proved by witnesses that they saw the defendant vote at each of the polling places. The court charged the jury, that it was not material nor necessary for the State to introduce any of the inspectors, and that the poll-lists were of no peculiar value as evidence, and had no higher grade than oral evidence.

The present statute is not materially variant from the acts of 1815 and 1819. Aik. Dig. p. 138–142. The duties of inspectors and clerks were defined under those statutes, and the mode of voting prescribed, as defined and prescribed in the statute of 1872–3, under which the indictment is found. Under those statutes, illegal voting, whether committed by voting more than once, or voting without the requisite qualifications, was punishable by a pecuniary penalty, recoverable by a *qui tam* action. In *Blackwell* v. *Thompson* (2 Stew. & Port. 348), which was a *qui tam* action for voting at an election without legal qualifications, it was held, the act of voting was not complete until the ballot was deposited in the box, and the name of the voter entered on the poll-lists kept by the clerks; and that before a conviction could be had, the poll-list, which was the highest evidence of the vote, must be produced, or account given of its absence. The poll-lists are required to be made and kept for the express purpose of showing who are the voters at an election. They are made by sworn officers, under the supervision of sworn officers, while the act of voting is being done, and as evidence of the act; of consequence, they

are the highest and best evidence of who are the voters at an election, as a written contract is the highest and best evidence of the agreement of parties, or the return of an executive officer is the highest and best evidence of his official act. It may be, as was suggested in argument, that a person voting illegally would vote in a fictitious, not in his real name, and of consequence his real name would not appear on the poll-lists. The fictitious name would appear, and the party indicted could by parol be identified as the person represented on the poll-lists by the fictitious name.

If it does not appear from the poll-lists that the defendant voted in his real name, or in the name by which he is indicted, nor that there is a name on the poll-lists representing the ballot cast by him, the offence of illegal voting has not been committed. A ballot found in the ballot-box, without a name on the poll-lists corresponding to it or with which it could be connected, could not be counted as a vote, could not affect the result of an election, and would be no more than a blank piece of paper. To sustain the charge against the defendant, it was indispensable to produce the poll-lists, and to have shown that on them appeared the name of the defendant as casting two votes, on names which he gave or recognized as his, corresponding with ballots received from him and deposited in the ballot-box. The charge given was therefore erroneous, in asserting the poll-lists were of no value as evidence, and were of no higher grade than oral evidence. It is not necessary to notice the refusals to charge as requested by the appellant. For the error in the charge given, the judgment of conviction is reversed and the cause remanded. The defendant will remain in custody, until discharged by due course of law.