268 So.2d 503

**Tommy Lee DOTSON**

v.

**STATE.**

**6 Div. 182.**

Court of Criminal Appeals of Alabama.

Oct. 24, 1972.

Leo E. Costello, Birmingham, for appellant.

MacDonald Gallion, Atty. Gen., and Charles H. Barnes, Asst. Atty. Gen., for the State.

**38**

## PER CURIAM.

Appellant was convicted by a jury in Jefferson County of murder in the first degree. The alleged victim was Allen Sanders. The death blow was inflicted with a knife wound in the victim's chest. The trial court denied appellant's motion for a new trial. Hence, this appeal.

The evidence was conflicting in many details. An argument which set the fatal blow in motion began without dispute in the home of one Rilla McGraw. The home, as one or more witnesses testified, was used to bootleg alcoholic beverages. A bar was set up in the home and wine was sold therefrom. A group of thirty-five or more persons, male and female, were assembled as was termed in the evidence "to have fun." The objective of this assemblage was disturbed or interrupted when an argument between the deceased Sanders and the defendant Dotson ensued.

What was said and done by and between the two participants, Sanders and Dotson, was the subject of differences of opinion among the witnesses as they appeared on the witness stand when Dotson was tried. We have reviewed all the testimony in obedience to the mandates of law. We think that the jury could have concluded from the evidence of Pearlie Ann Miller, who appeared as a witness for the State, that the defendant Dotson, outside the home of Rilla McGraw and across the street, a short time before the fatal blow, threatened to kill Sanders. No effort was then made to execute the threat.

The next encounter of Dotson and Sanders, according to the witness Miller, took place in the home of Rilla McGraw in the presence of an assemblage there present for social activities. According to this witness she and Sanders were dancing when Dotson and Sanders again confronted each other. The witness testified:

"Well, when we was in there dancing Joe come in there with his knife open, and he went over there to Allen, and he said or asked him, 'Did he have his.' His knife, or something, that is what he meant, and Allen said, 'No, I didn't.' He said he was going home to get his Roscoe. As he started out the door Joe stabbed him in his back. So, I said, 'Somebody go behind him.' I saw that he got cut, and I said, 'He is going to fall.' So, Joe ran behind him, and then all of us ran behind him. Allen slipped up and fell in front of the car lot, and he throwed up his arm and told him, 'Please don't cut me no more,' and that is when he stabbed him up here (indicating). He got up and struggled to this lady's house on the corner, and I ran across the street and called the police, and he ran, Joe ran."

There were other witnesses whose testimony conflicted with that of the witness Miller. There was some testimony that the witness was not at the home of Rilla McGraw when the confrontation between Sanders and Dotson occurred.

The defendant Dotson testified that he and the victim spoke to each other; that during a conversation he was having with John Thomas Pry, he was interrupted by Sanders. First one word and then another between them, according to Dotson, kindled antagonisms which culminated in Sanders trying to cut defendant with a hook knife and threatening to kill him. Dotson further testified that after Sanders tried several times to cut him he drew his knife and cut Sanders across the shoulder and that when Sanders came at him again he pushed him off and Sanders' knife flew out of his hand. It was then, so Dotson testified, that Sanders left with an utter-

ance that he was going to get his gun. The defendant Dotson testified that he then ran to the door to see where Sanders was going and "trotted down behind him." The defendant also asserted that Sanders was trying to cut him when he stabbed Sanders in the chest. It seems, according to the defendant, that Sanders stumbled and fell in front of the Crystal Car Wash. The defendant stated that he went from there to the home of his mother.

There was other evidence that Dotson chased Sanders as he was leaving the McGraw home to a nearby lot, a block or more distant, where Sanders stumbled and fell at which time the defendant pounced on him with his knife and stabbed him in the chest with a fatal blow.

We again comment that there were many conflicts in the testimony of the several witnesses. The resolution of these conflicts was addressed to the jury. We do not think further delineation of the evidence and the conflicts would serve any useful purpose and would unduly burden this opinion. Suffice it to say that the jury heard and saw the witnesses and formed an opinion adverse to the contentions of the defendant.

■ Appellant contends that the trial court committed reversible error in refusing to give written charge 7 which the defendant requested be submitted to the jury. This charge reads:

"The court charges the jury that if they believe from the evidence that the killing in this case resulted from the heat of passion, engendered in the defendant by the blow struck him by the deceased at the time of the fatal difficulty, and that the killing resulted solely from anger or heat of passion so engendered, the defendant cannot be convicted of murder, but of manslaughter, at the most."

It is to be noted that this charge 7 asserts as a matter of fact that the deceased Sanders struck the defendant Dotson with a blow that engendered heat of passion in the defendant. We think the jury could have drawn an inference or could have found from Pearlie Ann Miller's testimony that the deceased Sanders never did strike the defendant at any time, but the blows were all at the hands of Dotson on the person of Sanders. There was other evidence that Dotson struck the deceased with his knife. This charge, if not otherwise faulty, invaded the province of the jury to determine by whom the blows were delivered and which one of the participants struck the other with a knife if such blows were delivered. It was addressed to the jury to determine if Sanders ever struck Dotson with or without a weapon. The trial court was free of error in declining to give this charge.

■ Appellant complains that the trial court erred in permitting John Thomas Pry to testify in this case. Pry was not summoned as a witness for either side but was present in the courtroom when Rilla McGraw testified but according to his statement was not present when other witnesses were on the stand.

In view of this limited appearance in the courtroom, we do not think that the trial court abused its discretion in permitting this witness to testify. Such permission, even though the rule had been invoked so as to exclude witnesses from the courtroom, except when called to the stand and after the trial was over, was discretionary with the trial judge. Lynn v. State, 37 Ala.App. 400, 69 So.2d 485; Lewis v. State, 44 Ala.App. 319, 208 So.2d 228; Lawhorn v. State, 38 Ala.App. 543, 89 So.2d 690, cert. denied 265 Ala. 92, 89 So.2d 693.

Appellant contends in his motion for a new trial that the verdict of the jury was contrary to the preponderance of the evidence. We think that the trial court correctly overruled the motion and that this assertion in the motion is without merit. It is true, as we have already affirmed, that much of the evidence was in conflict

due to the circumstances attending the alleged confrontation in a crowded room where wine was available to confuse the spectators in their efforts to follow the trend of the confrontation of the involved disputants. The "fun" ceased and apprehension no doubt took over for awhile. The jury, after hearing the evidence and viewing the witnesses, resolved these conflicts adversely to the defendant Dotson. We are unwilling to say that the verdict was contrary to the preponderance of the evidence as defendant without serious argument asserts in his brief.

We have searched the record for errors in obedience to our statutory duty. We think the trial was free of error and the judgment of the court is due to be affirmed. We so order.

Affirmed.

All the Judges concur.