285 So.2d 134

**William BOYD**

v.

**STATE.**

**7 Div. 218.**

Court of Criminal Appeals of Alabama.

Aug. 21, 1973.

Rehearing Denied Sept. 25, 1973.

Rowan S. Bone, Gadsden, for appellant.

Charles A. Thigpen, Special Asst. Atty. Gen., Tuscaloosa, for the State.

LEIGH M. CLARK, Supernumerary Circuit Judge.

Appellant prosecutes this appeal from a judgment of the Circuit Court of Etowah County adjudging him guilty of grand larceny and sentencing him to imprisonment for a term of three years. The judgment was duly rendered and the sentence imposed by the court after a jury had found defendant, appellant herein, guilty of the crime as charged in an indictment, to which he had entered a plea of not guilty.

Our review of the record convinces us that there was ample evidence to support the verdict. No contention is here made to the contrary. Appellant has restricted the statement of the facts in his brief "to those facts as evidenced by the transcript, tendencies of which show" conduct on the part of a witness for the State that appellant characterizes in his brief as "misconduct". Such conduct is shown solely by the testimony of the witness, which, according to appellant's brief, is "in pertinent part * * * as follows:"

"Q. You have been talking about this case, have you not, Mrs. Estes?

"A. No, sir, not really I haven't.

"Q. You haven't talked to anyone about it?

"A. Not that much.

"Q. Maam?

"A. Not that much.

"Q. Well, now, you have been talking to people about it since you were sworn in this morning, haven't you?

"A. Since I have been up here I have.

"Q. Since you were sworn in?

"A. Yes, sir.

"Q. After the Judge talked to you and told you what your [sic] were to do after you were sworn in, is that correct?

"A. (Witness nods head in the affirmative.)

"Q. When you left from here or when we took a recess a few minutes ago you went out there or your husband came out there and you all talked, did you not? ·

"A. We went up to Mr. Rayburn's office, but we didn't say anything about it. He just said he had been on the witness stand since he had been gone.

"Q. Maam?

"A. He didn't say anything about it. I mean I didn't say anything to him about it.

"Q. You and Wesley went to Mr. Rayburn's office?

"A. Yes, Sir.

"Q. Is that correct?

"A. Yes, Sir.

"Q. And was Mr. Rayburn up there?

"A. Yes, sir, but we didn't get to see him.

"Q. You didn't get to see him?

"A. No, sir.

"Q. All right, the two of you went up there. Where else did you go?

"A. That's all.

"Q. That's all?

"A. Yes.

"Q. And how long did you wait up there?

"A. Until they came and said they were ready. We just went straight up there and waited.

"Q. You waited?

"A. Yes, sir.

"Q. You didn't get a chance to talk to Mr. Rayburn?

"A. No, sir.

"Q. But you then came on back down here with Wesley?

"A. Yes, sir.

"Q. And what all did you say about what happened in here?

"A. To Wesley?

"Q. Yes.

"A. I haven't said anything to him about it just now.

"Q. What did Wesley say to you about it?

"A. He just told me that he had been up here all time since, you know, I had been out there.

"Q. That he had been on the stand testifying and that Mr. Rayburn had asked him a lot of questions and I had asked him a lot of questions?

"A. Yes, sir.

"Q. And he also told you that William Boyd was in the courtroom seated beside me?

"A. He didn't say anything about it, but—

"Q. —Okay. But he told you what I asked him and he told you what Mr. Rayburn asked him, is that correct?

"A. No, sir.

"Q. He just talked about what had happened in here. Now, a while ago without anyone asking you you said 'that's the man that did it,' didn't you?

"A. Yes, sir.

"Q. Did Wesley tell you to say that when you got in here?

"A. No, sir.

"Q. Well, he told you that he had said it, didn't he?

"A. Wesley identified him. Wesley knew him.

"Q. He told you that he had said that that was the man that did it, but he didn't tell you to say that that was the man that did it?

"A. No, sir.

"Q. And you did hear what Judge Waid told you after you all were sworn here yesterday, didn't you?

"A. Sir?

"Q. I mean here today. You heard what he said? You heard him tell to you that you all were not to discuss the case with anyone except the lawyers and if you discussed it with the lawyers then to be sure that no one else was there to hear it, is that correct?

"A. Yes, sir."

The above quoted questions and answers were upon cross-examination of the witness, which ended with the last quoted question and answer; whereupon defendant's counsel requested and was granted an opportunity to make "a couple of motions" out of the presence of the jury. He first moved "to exclude the evidence and discharge" the defendant, which motion was overruled by the court. Thereupon defendant's counsel moved the court to declare a mistrial, which motion was also overruled. Argument is made in appellant's brief that reversible error was committed by the trial court "in refusing to grant the Appellant's motion for a mistrial . . . or otherwise take proper action to correct the very obvious misconduct of the witness."

Portions of the testimony quoted above indicate some violation by the witness of the instruction of the court at the time the witnesses were "put under the rule", to the effect that they were not to discuss the case with anyone except the lawyers. The extent of any violation of the instruction is not clearly shown by the testimony or elsewhere in the record. There is nothing to indicate that since she received instructions as to "the rule", she had been a party to any discussion of the facts of the case or what anyone had testified or would testify. That the conduct of the witness caused or could have caused any injury to defendant is highly speculative, but whether so or not, the action of the trial court was well within its discretionary province in a double aspect. This Court has spoken as to each phase. As to one, we refer to what was said in Franks v. State, 45 Ala.App. 88, 224 So.2d 924:

"[5] In Shadle v. State, 280 Ala. 379, 194 So.2d 538, our Supreme Court stated that:

"'[It] is well recognized that the granting of a mistrial is within the sound discretion of the trial court, for he, being present, is in a much better position to determine what effect, if any, some occurrence may have upon the jury's ability to decide the defendant's fate fairly and justly. And we will not interfere with the trial judge unless there had been a clear abuse of discretion.'",

and to what was stated in Thomas v. Ware, 44 Ala.App. 157, 204 So.2d 501:

"Our Code reflecting the ancient practice of a motion to withdraw a juror, Martenhoff v. Wilken, 246 App.Div. 884, 284 N.Y.S. 865, provides in Title 30, § 100:

"'§ 100. The courts or presiding judges in all cases of jury trial may discharge the jury without giving a verdict, with the consent of all parties to the trial, or without the consent of the parties, when in the opinion of the court or judge there is a manifest necessity for the discharge, or when the ends of justice would otherwise be de-

**328**

feated. In all cases, in which the jury is discharged, without a verdict, a mistrial shall be entered upon the minutes of the court, assigning the reason or cause for the mistrial; and no person shall gain any advantage by reason of such discharge of the jury.'

"[8] We note that in § 100, supra, the terms 'manifest necessity' and 'the ends of justice would otherwise be defeated' are used. These standards are stronger against a presumption of error than those employed in Supreme Court Rule 45, where *probable* injury to a substantial right of a party is the yardstick."

As to the other phase, we abide by what was stated in Moulton v. State, 19 Ala. App. 446, 98 So. 709, cert. denied, 210 Ala. 656, 98 So. 715:

"[4] When a witness disobeys an order excluding him from the courtroom during the examination of witnesses, the better practice, where there has been no misconduct of the party calling him, is to admit his testimony, and punish him for contempt. Bell v. State, 44 Ala. 393. It is discretionary with the trial court to permit a witness placed under the rule, but who violates it, to testify. Sanders v. State, 105 Ala. 8, 16 So. 935; Hall v. State, 137 Ala. [44], 47, 34 So. 680; Wilson v. State, 52 Ala. 299."

The principle has been applied in relatively recent cases, particularly in Beddow v. State, 39 Ala.App. 29, 96 So.2d 175, cert. denied, 266 Ala. 694, 96 So.2d 178; Howton v. State, 43 Ala.App. 10, 178 So.2d 566; and Thigpen v. State, 49 Ala.App. 233, 270 So.2d 666. Reference is made also to Annot. 14 A.L.R.3d 16–117, Effect of Witness' Violation of Order of Exclusion. We hold that the trial court ruled correctly in overruling defendant's motion for a mistrial. It necessarily follows that the trial court was correct in overruling defendant's motion to exclude the evidence and discharge the defendant.

With respect to the alternative contention in appellant's brief, that the trial court should have taken "proper action to correct the very obvious misconduct of the witness", our attention has not been directed to, and we do not conceive of, any action that should have been taken by the trial court that would have been of benefit to defendant in the premises.

We find that the record does not show any error prejudicial to defendant and that the judgment appealed from should be affirmed.

The foregoing opinion was prepared by Hon. LEIGH M. CLARK, Supernumerary Circuit Judge, serving as a judge of this Court under § 2 of Act No. 288, July 7, 1945, as amended; his opinion is hereby adopted as that of the Court.

The judgment below is hereby

Affirmed.

All the Judges concur.