The appellant was convicted of capital murder for the offense of murder committed during a robbery in the first degree. See § 13A-5-40(a)(2), Code of Alabama 1975. Following a sentencing hearing, the jury returned an advisory verdict of life imprisonment without parole. Thereafter, following a separate sentencing hearing in front of the trial court, the appellant was sentenced to life in the penitentiary without the possibility of parole. *Page 631 
 I
The appellant argues that the trial court erred in denying his objections to the prosecutor's strikes of black venire-members, in violation of Batson v. Kentucky,476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). On appeal, the appellant specifically argues that the prosecutor's reason for striking veniremember number 1 was not race-neutral and that the prosecutor's reason for striking four of the potential jurors, i.e., their age, was not race-neutral.
The record in this case indicates that the appellant is a young black male and that the victim was an 82-year-old white female. The prosecutor used all of his 17 strikes to remove black veniremembers, while the defense used 1 of his 17 strikes to remove a black veniremember. The jury consisted of 10 blacks and 2 whites. The trial court stated that it believed the final jury was fair, in that the percentage of blacks on the jury panel was greater than the percentage of blacks residing in the community. However, the trial court stated that it would require the prosecutor to give reasons for his strikes in order to present a complete record. Thus, we must review those reasons. Jackson v. State, 594 So.2d 1289 (Ala.Cr.App. 1991).
Although the appellant argues that four of the veniremembers were improperly struck because of their age, the record reveals that the prosecutor gave additional reasons for the strike of each of these veniremembers.
Specifically, as to the first of these potential jurors, the prosecutor stated that she had a reputation for failing to pay bills. The prosecutor stated that he had either sued the potential juror on that basis or had written a collection letter to her. He added that she was young, which he said he thought might cause her to sympathize with the appellant. SeeSiler v. State, 629 So.2d 33 (Ala.Cr.App. 1993) (wherein veniremember was properly struck pursuant to prosecutor's belief that he had been prosecuted for passing bad checks);Childers v. State, 607 So.2d 350 (Ala.Cr.App. 1992) (wherein a veniremember was properly struck where prosecutor stated that he was currently in the process of prosecuting the veniremember in a bad check case); Bryant v. State, 516 So.2d 938
(Ala.Cr.App. 1987) (wherein potential juror was properly struck by prosecutor because the challenged juror had written bad checks).
The prosecutor stated that another potential juror who was struck on the basis of age was also struck because he was currently being investigated by the district attorney's office in relation to a sexual abuse case. Also, the prosecutor indicated that he had previously represented a party who had been sued by this potential juror's mother and that a verdict had been in favor of his client in that case. " 'A veniremember's involvement in or connection with criminal activity may serve as a race-neutral reason for the strike of that veniremember.' Naismith v. State, 615 So.2d 1323, 1325
(Ala.Cr.App. 1993)." Reese v. City of Dothan, 642 So.2d 511
(Ala.Cr.App. 1993). Furthermore, the fact that a prosecutor had represented a party adverse to the interest of a veniremember's relative has been held to be a race-neutral reason for striking the veniremember. See Green v. State, 571 So.2d 356, 357
(Ala.Cr.App. 1990).
As to another female potential juror who was struck because she was young, the prosecutor indicated that the potential juror did not answer a particular question about law enforcement contained on a form that the potential jurors were asked to complete. The prosecutor stated that she answered "yes and no" to another question and that he had been told "by Johnny Hatter through Edd Billingsley [that] she engaged in an unlawful activity, specifically prostitution, in the recent past." Both Johnny Hatter and Edd Billingsley were witnesses for the State. Involvement by a potential juror in criminal activity has been held to be a race-neutral reason for striking that potential juror. Moreover, a veniremember's evasive or ambiguous answers to questions has been held to be a race-neutral reason for the strike of that veniremember.Mitchell v. State, 579 So.2d 45, 49 (Ala.Cr.App. 1991), cert. denied, 596 So.2d 954 (Ala. 1992).
The last veniremember struck on the basis of age was also struck because she gave no answer to question number 31 on the *Page 632 
juror form, concerning her attitude toward law enforcement, and because the prosecutor stated that "there were other blacks I wanted to keep; therefore, there were some I had to strike." Without examining the validity of the latter of these reasons, we conclude that the evasiveness of the veniremember's response to the question concerning her attitude toward law enforcement served as a race-neutral reason for striking her. Mitchell v.State, supra. As long as one reason given by the prosecutor for the strike of a potential juror is sufficiently race-neutral, a determination concerning any other reason given need not be made. Smith v. State, 620 So.2d 732, 733 (Ala.Cr.App. 1992). See also Davis v. State, 555 So.2d 309 (Ala.Cr.App. 1989).
The appellant takes particular exception to the prosecutor's strike of a potential juror on information that the potential juror was prejudiced against whites. The record indicates that the prosecutor gave the following reason for the strike of this potential juror:
 "I was advised by Chris Vaughan, the police chief of Cuba, and by Chief Cleveland Brown, the police chief of York, [that] they did not believe he would convict a black for killing a white. They felt he was prejudiced and might be okay on a drug case. They did not think he would be suitable to be on this type of case because of his prejudice. And they did not feel he would under any circumstances convict a black. And Chief Cleveland Brown, I might add, is the black police chief of York. And this was his statement to Mr. Billingsley, who related it to me. Under those circumstances I felt it would be foolish to leave him on there."
In a recent decision, the United States Supreme Court stated:
 "Parties still may remove jurors who they feel might be less acceptable than others on the panel; [race and] gender simply may not serve as a proxy for bias. Parties may also exercise their peremptory challenges to remove from the venire any group or class of individuals normally subject to 'rational basis' review. See Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439-442[, 105 S.Ct. 3249, 3253-55, 87 L.Ed.2d 313] (1985); Clarke v. Jeter, 486 U.S. 456, 461[, 108 S.Ct. 1910, 1914, 100 L.Ed.2d 465] (1988). Even strikes based on characteristics that are disproportionally associated with one gender [or race] could be appropriate absent a showing of pretext. . . .
 "If conducted properly, voir dire can inform litigants about potential jurors making reliance upon stereotypical and pejorative notions about the particular gender or race both unnecessary and unwise. Voir dire provides a means of discovering actual or implied basis and a firmer basis upon which the parties may exercise their peremptory challenges intelligently. . . .
 ". . . Then when an explanation is required, it need not rise to the level of a 'for cause' challenge; rather, it merely must be based on a juror characteristic other than gender [or race], and the proffered explanation may not be pretextual."
J.E.B. v. Alabama, ___ U.S. ___, ___, 114 S.Ct. 1419, 1429-30,128 L.Ed.2d 89 (1994).
Although the idea that a particular race is prejudiced against another race may be the result of stereotyping, in the present case there was no showing of pretext, in that this reason was based on specific information from specific individuals. Moreover, one of the individuals who accused the potential juror of bias was of the same race as the potential juror, cf. Ex parte Bui, 627 So.2d 855 (Ala. 1992) (Adams, J., concurring specially), and this may indicate the lack of racial motivation.
The record reveals that, after the prosecutor presented all of his reasons for his strikes, the trial court denied the appellant's Batson motion, stating:
 "Once again, the panel as I understand it is predominately black, which is 10 to 2 and more than the community makeup of black and white in the community. The reasons given by the State I find to be valid reasons to strike one black over other blacks that would be remaining on the panel, especially in view of the fact the defense struck 16 of 17 whites in the case. *Page 633 
I don't find this is a proper Batson case. Therefore, I deny your challenge."
A trial court is in a better position to determine if peremptory challenges of jurors were motivated by intentional discrimination. The court's findings in this regard are to be afforded great deference and its judgment will not be reversed on appeal absent clear error. Ex parte Lynn, 543 So.2d 709
(Ala. 1988), cert. denied, 493 U.S. 945, 110 S.Ct. 351,107 L.Ed.2d 338 (1989).
In order for a prosecutor's explanations for his peremptory challenges to be held to be legally proper, they must satisfy the following requirements:
 "The explanations for the strikes must be 'clear, specific, and legitimate,' 'relate[d] to the particular case to be tried,' and 'nondiscriminatory.' Ex parte Branch, 526 So.2d 609, 623 (Ala. 1987) (emphasis omitted). In Hernandez v. New York, [500] U.S. [352], [___], 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991), the Court further elaborated on the required explanation: 'a neutral explanation in the context [of Batson] means an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral.' "
Cox v. State, 629 So.2d 664, 667 (Ala.Cr.App. 1992), reversed,629 So.2d 670 (Ala. 1993).
Based on the explanation given by the prosecutor, the race of the juror was not the sole basis for his peremptory strikes; therefore, the reasons are race-neutral.
 II
The appellant argues that the trial court erred in allowing certain State's witnesses, who had been present in the courtroom during part or all of the testimony of other witnesses, to testify despite the invocation of the "the rule." Rule 9.3(a), A.R.Cr.P. The record indicates that before the first witness testified, the court stated that at the State's request the deceased's granddaughter was sitting at the counsel table as the representative of the family and as a victim. The court also noted, for the record, that the victim's granddaughter would testify and that the appellant objected on the grounds that her sitting at counsel table was prejudicial to him because it would inflame the jury and because the granddaughter would also testify.
The first witness, a U.P.S. worker, testified that, on the day of the offense, he attempted to make a delivery to the deceased's house[1]; however, no one appeared to be at home. He said that shortly thereafter, he drove by her residence and observed a black man standing near a garbage barrel, approximately 50 to 75 yards from a store that was located close to the victim's house. He testified that he could not positively identify the individual, but that at that same time he also noticed a white pick-up truck parked in front of the victim's house. Following the cross-examination of this witness, the prosecutor called Glenn Brown to the stand. Defense counsel objected on the ground that Brown had been seated in the back of the courtroom and had heard the testimony of the first witness and had possibly heard the opening arguments. The trial court noted that "the rule" had been invoked. The prosecutor responded that before the trial began he and Deputy Johnny Hatter had searched the courtroom for any witnesses and had found and removed several from the courtroom. He stated that Brown was seated in the jury's area and that neither he nor Deputy Hatter had seen him. The prosecutor stated that he had "had no idea" that the witness was present in the courtroom. The trial court then asked the prosecutor if Brown's testimony related to that of the first witness. The prosecutor responded, "I don't know he saw him (sic)." The trial court then overruled the objection.
Defense counsel then objected to the presence in the courtroom during the testimony of other witnesses of Chief Deputy Hatter, on the grounds that his testimony would relate to demonstrative evidence in the State's case, and the appellant was objecting *Page 634 
to the suppression of the alleged weapon. The trial court responded, "He is the Chief Deputy Sheriff and is also helping provide security in the courtroom. . . . We have a limited number of deputies. I'm going to exclude him from the rule. I'll overrule and allow him to remain because of the limited number of deputies, the situation, and security required."
Glenn Brown then testified that he arrived at the scene of the crime and observed the victim's granddaughter carrying a package from the house toward the back of the store. He then entered the store and saw what appeared to be the leg of a table lying on the floor, but saw no one inside. He then heard what sounded like blows being struck outside the back door of the store, and observed a young black man run past the door. The deceased's granddaughter then entered the store, bleeding profusely. She asked if he knew where her grandmother was, at which time they observed the deceased lying on the floor behind the counter. The witness testified that he knew the appellant but that he was unable to identify the young black male who ran past the door, because he did not get a sufficient look at the man.
Under these circumstances, it was not error for the trial court to allow the three witnesses to testify. Although Brown was not removed from the courtroom after the invocation of the rule, his testimony was not related to that of the first witness, the U.P.S. worker. Moreover, the deceased's granddaughter was properly allowed to remain at counsel table, although she was also a witness, because she was representing the family and the victim. Deputy Sheriff Hatter was also properly allowed to testify and was properly excluded from the rule, for the security reasons stated by the trial court.
"That the conduct of the witness caused or could have caused any injury to defendant is highly speculative, but whether so or not, the action of the trial court was well within its discretionary province. . . ." Boyd v. State, 51 Ala. App. 324,327, 285 So.2d 134, 137 (1973), cert. denied, 291 Ala. 773,285 So.2d 138 (Ala. 1973).
 "When a witness disobeys an order excluding him from the courtroom during the examination of witnesses, the better practice, where there has been no misconduct of the party calling him, is to admit his testimony, and punish him for contempt. Bell v. State, 44 Ala. 393. It is discretionary with the trial court to permit a witness placed under the rule, but who violates it, to testify. Sanders v. State, 105 Ala. 8, 16 So. 935; Hall v. State, 137 Ala. [44], 47, 34 So. 680; Wilson v. State, 52 Ala. 299."
Moulton v. State, 19 Ala. App. 446, 449, 98 So. 709, cert. denied, 210 Ala. 656, 98 So. 715 (1923). See also Dotson v.State, 49 Ala. App. 37, 268 So.2d 503, 505 (1972).
Furthermore, in Goodman v. State, 52 Ala. App. 265,291 So.2d 358, 363 (1974), the trial court permitted three deputy sheriffs who were witnesses in the case to remain in the courtroom for security purposes, although the rule had been invoked. This court stated:
 "Exclusion of some witnesses and not others is entirely a matter of discretion with the trial court, and this discretion is not reviewable. This seems to be particularly true in the case of law enforcement officers. DeFranze v. State, 46 Ala. App. 283, 241 So.2d 125; Nichols v. State, 267 Ala. 217, 100 So.2d 750; Elrod v. State, 281 Ala. 331, 202 So.2d 539."
291 So.2d at 363-64.
We find no abuse of discretion by the trial court in allowing the witnesses to testify in this case.
 III
The appellant argues that the trial court erred in denying his motion for a mistrial, which alleged improper contact between a juror and a witness.
 " 'Any communication or contact outside the jury room about the matters at trial between a juror and another person is forbidden where that contact "might have unlawfully influenced that juror [. . .]." ' Ebens v. State, 518 So.2d 1264-1267 (Ala.Cr.App. 1986) (quoting Roan v. State, 225 Ala. 428, 435, 143 So. 454, 460 (1932)).
 " 'An unauthorized contact between the jurors and a witness does not necessarily *Page 635 
require the granting of a mistrial. It is within the discretion of the trial court to determine whether an improper contact between a juror and a witness was prejudicial to the accused.' Ex parte Weeks, 456 So.2d 404, 407 (Ala. 1984), cert. denied, 471 U.S. 1030, 105 S.Ct. 2051, 85 L.Ed.2d 324 (1985)."
Knox v. State, 571 So.2d 389, 390-91 (Ala.Cr.App. 1990).
The record indicates that during the direct examination of a State's witness, the trial court instructed the jury to retire to the jury room. Thereafter, outside the presence of the jury, the following transpired:
 "[Defense counsel]: Your Honor, at approximately 11:38 this morning as you dismissed the jury to lunch, one of the jurors, an older black female, who I believe — I'm not sure — might be M. R., came over and expressed sympathy and feelings towards Charmain Jenkins, who is a witness and a victim in this case. We feel that such action is inappropriate. While we understand perhaps the feeling of sympathy, such feelings are highly prejudicial to the defendant and . . . such actions would be grounds for a mistrial in this case.
 "[Prosecutor]: Your Honor, Charmain, I believe, will testify she doesn't even know the lady. And she didn't say a word to her.
 "[Defense counsel]: I don't question that. I don't know her, and I don't think Mr. Watkins knows her. I don't know if anyone does. I think what she did is indicative of feelings she's expressed, that she's formed an opinion. And who knows when they get together what she will relate. I think that is improper actions for a juror and grounds for a mistrial.
 "THE COURT: I observed the entire matter. In fact, it took place within two feet of both of you and three feet of me. While the jury was going to the jury room, one of the jurors, unsolicited, an older black female, walked up to Ms. Jenkins, who was seated at the counsel table, and made some statement to her. At that time I indicated to the district [attorney] that it was improper, and he informed the lady she needed to go to the jury room. It was an action by a juror unsolicited from anything. I observed the entire thing. She was walking over to the witness who had previously testified about the death of her grandmother. Unsolicited, she made a statement.
"What did she say to you?
 "MS. JENKINS: She just asked me if I remembered her and that she was so sorry.
"THE COURT: Asked if you remembered her?
 "MS. JENKINS: Yes. And I'm sorry, but I don't know who she is. I think she was the one — I remember her during the jury. She said I think that she once many, many, many — I guess she was raised in Whitfield. But there is a good bit of age difference, and I do not know her.
 "THE COURT: The statement she made to you in the courtroom was did you remember her?
"MS. JENKINS: Yes, sir.
"THE COURT: What else did she say?
"MS. JENKINS: That's all.
"THE COURT: Just said, 'Do you remember me?'
"MS. JENKINS: Yes, sir.
"THE COURT: Did she say anything else?
 "MS. JENKINS: Well, she kind of looked and said, 'I'm sorry.' Well, that's what she looked like she was fixing to say. 'I'm,' like that, and she didn't get it all the way out.
 "THE COURT: I'm going to overrule the motion for mistrial. I find there was no conduct at all by anyone that brought on this display by the juror. It was not witnessed by any of the other jurors in my opinion.
 "[Prosecutor]: She was towards the last of the people going out.
"[Defense counsel]: We don't know.
 "THE COURT: Well, I was observing the jurors. In fact, it took place within three or four feet from me. She was the last juror. She got out of line. There were one or two behind her, but after she got out of line, the others went on. The only *Page 636 
other alternative we might have would be to remove her as a juror and replace her with an alternate. But I don't think there was anything anyone did to cause this other than the initiative of the juror herself. Therefore, I deny your motion for a mistrial."
According to the record, neither the witness nor the State initiated the contact, and because no other juror was exposed to the juror's statements, there is no indication that the contact resulted in any prejudice to the appellant. Moreover, the statements by the juror indicate sympathy for the victim rather than a belief the appellant committed the offense. InState v. Daniel, 378 So.2d 1361 (La. 1979), two jurors were approached by a State's witness, who was the mother of one of the victim's, during a recess at trial. She asked one of the jurors if he knew her son and then she "flashed" a photograph of the victim, identifying him. The jurors stated that they were "unable to avoid looking at the photograph," but turned and walked away as the victim's mother quickly placed the photograph in her purse. Subsequently, a motion for a new trial was made based on this improper contact. At the hearing on that motion, both jurors testified that they observed the photograph, but that it did not affect their judgment. One of the jurors, however, admitted that, during the course of the trial, he may have had other short conversations with the victim's mother. In upholding the trial court's denial of the motion for a mistrial, the Louisiana Supreme Court noted that to overturn a conviction on the grounds of juror misconduct prejudice must be shown. That court stated:
 "There is no showing of prejudice in this record, only the general and unsubstantiated assertions of the defense. Nor does the defense intimate that these encounters were motivated by a desire to prejudice the defense by influencing the jurors' verdict. To the contrary, defense counsel in brief disclaims such a contention. In these matters we do not deal in speculation and conjecture. Rules of law and facts are the best guarantee of fairness and justice for the accused and for the State."
378 So.2d at 1364.
In Davis v. State, 457 So.2d 992 (Ala.Cr.App. 1984), the defendant made a motion for a mistrial on the grounds that one of the jurors was seen speaking to the victim during a recess at trial. A hearing was held on the matter, and the trial court noted that the charge presented "a touchy thing," and advised that the best course of conduct might have been to admonish the jury to avoid contact with the parties, without more. However, the trial court stated that it would allow the defendant to question the juror, or the trial court would ask specific questions of the juror, but the trial court stated that such conduct may "cause a mistrial situation . . . based on the affect of that individual questioning." 457 So.2d at 993. The trial court then denied the motion for a mistrial. After the verdict was returned, another hearing was held, at which time both the victim and the juror were questioned. The parties indicated that they had been childhood friends, but had not seen each other for approximately 35 years, and did not recognize each other until that time. They denied discussing the case. The juror testified that her vote of guilty was based solely on the facts presented at trial. In upholding the trial court's denial of the motion for a mistrial, this court stated:
 "In Gaffney v. State, 342 So.2d 403
(Ala.Crim.App. 1976), cert. denied, 342 So.2d 404 (Ala. 1977), the court was faced with a situation where a juror and the mother of the deceased victim had a conversation during the course of the trial. Both of them testified that they said nothing about the case. This court stated:
 " 'The prejudicial effect of communications between jurors and others, especially in a criminal case, determines the reversible character of the error. Whether there has been a communication with the juror and whether it has caused prejudice are fact questions to be determined by the Court in the exercise of sound discretion. The evidence pertaining to the conduct of this juror was submitted at the hearing on motion for new trial. It became the duty of the trial judge to exercise his reasonable discretion in weighing and determining *Page 637 
such evidence and making his decision thereon. His ruling and determination will not be disturbed in the absence of a showing of abuse of discretion. Such abuse was not, in our opinion, in any way evident.' "
457 So.2d at 995. See also Simms v. State, 56 Ala. App. 156,320 So.2d 89, 94 (1975).
There is no indication that the juror discussed any of the particulars of the case or that the appellant suffered any prejudice by this contact. Therefore, we find no abuse of discretion by the trial court in denying the appellant's motion for a mistrial.
 IV
The appellant argues that the trial court erred in admitting into evidence a videotaped statement and the written transcript of the statement made by the appellant, because, he says, he was not advised of his rights pursuant to Miranda v. Arizona,384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), before he made the statement. The record indicates that, on the night of the offense, the appellant was taken to Sumter County jail, after having been arrested. The chief investigator for the district attorney's office testified that he advised the appellant of his Miranda rights before questioning him, in the presence of the sheriff of Sumter County. The appellant signed a statement indicating that he understood his rights and that his rights had been read to him. He then signed a waiver of those rights. The record indicates that he was advised of his rights at approximately 8:30 p.m. and that he originally denied any involvement in the crime, claiming that he had not been in the area of the offense that day. At 8:51 p.m., the chief investigator stated that the interview was ended and the record reflects that the recorder and the videotape camera were stopped. At 8:55 p.m., the record indicates that the recorder and the videotape camera were again turned on by the chief investigator, who stated that the appellant had indicated that he was now willing "to tell the truth." The appellant then stated that he had been at the scene of the offense that day, whereupon the chief investigator reminded him that his Miranda
rights were still in effect. Thereafter, the appellant confessed.
The appellant argues that because there is no indication in the record that he was reread his Miranda rights immediately before he began what became his admission, this statement should not be allowed into evidence. However, the record indicates that the appellant's statement was stopped only for approximately four minutes. There is no indication that any threats or promises were made to the appellant during that intermission.
"[T]here is no requirement that a suspect be informed of his constitutional rights before each interrogation in a series of interrogations. C. Gamble McElroy's Alabama Evidence§ 201.09 (4th ed. 1991). A determination of whether Miranda warnings must be repeated should be made on a case-by-case basis.Magwood [v. State, 494 So.2d 124 (Ala.Cr.App. 1985), affirmed,494 So.2d 154 (Ala.), cert. denied, 479 U.S. 995[,107 S.Ct. 599, 93 L.Ed.2d 599] (1986)]; Tolbert v. State, 450 So.2d 805
(Ala.Cr.App. 1984)." Holliday v. State, 641 So.2d 325, 327
(Ala.Cr.App. 1994) (wherein a statement taken a little more than three hours after a statement for which the defendant had been advised of and waived his rights was properly admitted into evidence, although the defendant had not been advised of his rights again.) See Johnson v. State, 584 So.2d 881
(Ala.Cr.App. 1991) (wherein a statement taken six hours following a statement for which the defendant had been advised of his rights was properly admitted, although no renewedMiranda warnings had been given.)
A time lapse of approximately four minutes is clearly not excessive, and no events recorded or suggested in the intervening time period required the repetition of the appellant's Miranda warnings. See Fagan v. State,412 So.2d 1282 (Ala.Cr.App. 1982); Love v. State, 372 So.2d 414
(Ala.Cr.App. 1979); Jones v. State, 47 Ala. App. 568,258 So.2d 910 (1972).
 V
The appellant argues that the trial court erred in allowing into evidence money *Page 638 
taken from the appellant's coat after his arrest and the murder weapon, because, he says, he was not readvised of his rights pursuant to Miranda v. Arizona before giving up this evidence.
The record indicates that the offense occurred on the morning of December 30, 1991. That night, the appellant was arrested and gave a statement admitting his guilt in committing the offense. Thereafter, the appellant agreed to take law enforcement officers to where he had disposed of the murder weapon. However, because it was dark, the search for the weapon had to be called off. The next morning, the officers took the appellant back to the same area to continue the search. Before leaving the jail for the second search, a deputy sheriff reminded the appellant that his Miranda warnings still applied and then questioned him concerning the money that had been found in his coat. Thereafter, before exiting a car at the second search, another deputy sheriff reminded the appellant of his Miranda warnings. The appellant argues that, because neither of these deputy sheriffs were present when he had been previously informed of his Miranda rights, they could not have known whether he had been so informed, and therefore, he argues, the admission of these items into evidence was error.
For the reasons set out in Part IV of this opinion, because the time between the reading and waiving of the appellant'sMiranda rights and the subsequent obtaining of evidence was not excessive, and because no intervening act or circumstance occurred that would have required the renewal of the appellant's Miranda warnings, no error occurred. Moreover, the State introduced evidence that the appellant had been reminded of his Miranda warnings before both cited instances. See Lovev. State, supra (wherein second statement, given at a different location and to a different officer six hours after the only full Miranda warnings were administered was properly admitted); and Ballard v. Johnson, 821 F.2d 568 (11th Cir. 1987) (second statement, which was given at a different location and in which defendant merely acknowledged that he had previously been advised of, and waived, his Miranda rights, was properly admitted).
Based on the foregoing, the judgment is due to be affirmed.
AFFIRMED.
All Judges concur.
[1] The record indicates that the house was near the store at which the victim worked.