The appellant, Billy Ray Myers, was convicted of one count of robbery in the first degree, a violation of § 13A-8-41, Code of Alabama 1975, one count of rape in the first degree, a violation of § 13A-6-61, and three counts of kidnapping in the second degree, violations of § 13A-6-44. He was sentenced as a habitual offender to life imprisonment without parole for the robbery and rape convictions and to life imprisonment for each of the kidnapping convictions.
The state's evidence tended to show that on October 13, 1993, the appellant abducted 21 year-old A.B. in Enterprise, Alabama. A.B. and the appellant had been coworkers and the appellant offered to let A.B. live in one of his mobile homes after she lost her job. A.B. testified that as they were driving *Page 809 
to view the mobile home the appellant drove into the woods and chained her to a tree. The appellant forced A.B. to remove her clothes and then tried to solicit her to work for him as a prostitute and drug seller. A.B. refused, and the appellant eventually released her. The appellant threatened to kill A.B. if she told anyone what had happened.
Approximately one month later, on November 6, the appellant asked his sister-in-law, B.L., and her 13-year-old daughter, L.L., to go riding with him in his truck while he looked for deer tracks. As they were returning home the appellant stopped the truck and pointed a gun at B.L.'s head. The appellant ordered the victims to walk into the woods where he chained B.L. to a tree. The appellant took L.L. to another location where he proceeded to have sexual intercourse with her. About an hour later, the appellant returned and unchained B.L. The appellant returned the victims to their home and threatened to kill them if they told the police what had happened.
 I
The appellant contends that the evidence was insufficient to support his conviction for the rape of L.L. because, he says, there was no medical testimony to prove that penetration occurred. However, L.L. testified that the appellant forced her to have sex with him. L.L. further testified that the appellant's penis penetrated her vagina. This testimony was sufficient to establish the penetration element of the offense of rape. See Williams v. State, 536 So.2d 169
(Ala.Cr.App. 1988). "In Alabama, it is well settled that a conviction for rape may be had on the uncorroborated testimony of the victim." Williams, 536 So.2d at 172.
Similarly, the appellant contends that the evidence was insufficient to support his conviction for the kidnapping of A.B. because, he says, 1) A.B.'s uncorroborated testimony provided the only evidence of the crime and 2) there was no showing of an intent to "secretly confine or imprison" the victim.
First, " 'a jury may believe or disbelieve all or any part of the testimony presented by either side, and even when all of the evidence against an accused comes from the victim, the jury may believe such uncorroborated testimony beyond a reasonable doubt and convict the accused.' " Robinson v. State,545 So.2d 828, 834 (Ala.Cr.App. 1989), quoting Jeffers v. State,455 So.2d 201 (Ala.Cr.App. 1984). Second, the state was not required to prove an intent to "secretly confine or imprison" as an element of the kidnapping offense. Ex parte Guess, 507 So.2d 551
(Ala. 1987). Section 13A-6-44 provides "A person commits the crime of kidnapping in the second degree if he abducts another person." (Emphasis added.) The term "abduct" is defined in §13A-6-40(2) as follows:
 "To restrain a person with intent to prevent his liberation by either:
 "(a) Secreting or holding in a place where he is not likely to be found, or
 "(b) Using or threatening to use deadly physical force."
The state established a prima facie case of second degree kidnapping against the appellant when A.B. testified that the appellant transported her to the woods against her will, chained her to a tree, and threatened to kill her.
 II
The appellant contends that the trial court erred in allowing the introduction of deoxyribonucleic acid (DNA) "matching" and "population frequency" evidence. Specifically, the appellant asserts that the state failed, under Ex parte Perry,586 So.2d 242 (Ala. 1991), to show that the testing procedures were performed without error and were correctly interpreted. Perry
set forth the following three-pronged test to govern the admissibility of DNA evidence:
 "I. Is there a theory, generally accepted in the scientific community, that supports the conclusion that DNA forensic testing can produce reliable results?
 "II. Are there current techniques that are capable of producing reliable results in DNA identification and that are generally accepted in the scientific community?
 "III. In this particular case, did the testing laboratory perform generally accepted scientific techniques without error in the *Page 810 
performance or interpretation of the tests?"
Ex parte Perry, 586 So.2d at 250.
The appellant's claim addresses the third prong of thePerry test. Faron Brewer, a forensic serologist with the Alabama Department of Forensic Sciences, testified in detail as to how the tests were conducted and the quality control measures taken to insure the tests results were error-free. Brewer also testified concerning the calculation, interpretation, and reliability of the population frequency statistics. The appellant argues that the state was required to offer some sort of corroborative evidence to meet its burden of proof, such as the actual autoradiograph or a copy of the data pool on which the various calculations were based. The appellant offers no, and neither can we can find, case law to support such an assertion. This is not a requirement set out inPerry.
The appellant also contends that the state failed to comply with the discovery orders of the court concerning the DNA evidence. However, this issue was not preserved for review because it is raised for the first time on appeal. Barger v.State, 562 So.2d 650 (Ala.Cr.App. 1989), cert. denied,562 So.2d 656 (Ala. 1990).
 III
The appellant contends that the trial court erred in denying his motion for a mistrial based on contact by jurors with witnesses and members of the victims' families. Five specific instances are cited: 1) Juror S stated that she frequented the store where B.L. worked and that she recognized B.L. after she took the witness stand; 2) Juror H stated that L.L.'s grandfather approached him in the hallway and discussed a trucking company they both had worked for years ago; 3) Juror C also talked to L.L.'s grandfather in the hallway concerning the trucking business; 4) Juror B stated that she recognized one of the state's witnesses from work and that she occasionally spoke to her, and 5) another witness stated that she recognized Juror H as the brother of her deceased husband.
"An unauthorized contact between the jurors and a witness does not necessarily require the granting of a mistrial. It is within the discretion of the trial court to determine whether an improper contact between a juror and a witness was prejudicial to the accused." Ex parte Weeks, 456 So.2d 404, 407
(Ala. 1984), cert. denied, 471 U.S. 1030, 105 S.Ct. 2051,85 L.Ed.2d 324 (1985). In order to be entitled to a mistrial due to contact by a juror with witnesses or others, prejudice must be shown. Johnson v. State, 648 So.2d 629 (Ala.Cr.App. 1994).
Here, there is no indication in the record that the jurors' conversations were anything other than brief and innocent. The facts of the case were never discussed and there was no evidence of willful concealment. Moreover, the trial court stated that the courtroom conditions made chance meetings between the various individuals involved in the case inevitable. Each juror was examined by the court and stated that he or she could render a fair and impartial verdict based solely on the evidence. Consequently, the appellant cannot show that he suffered any prejudice. "[A] mistrial is a drastic remedy, to be used only sparingly and only to prevent manifest injustice." Ex parte Thomas, 625 So.2d 1156, 1157 (Ala. 1993). The trial court did not err in denying the appellant's motion for a mistrial.
 IV
The appellant also contends that the trial court erred in allowing the state to question the appellant about the details of his prior convictions. The appellant urges that this issue be considered even though it was not preserved for review because he is under a sentence of life imprisonment without parole.
"It is well settled under Alabama law that matters not objected to at trial cannot be raised or considered for the first time on appeal." Barger, 562 So.2d at 656. Moreover, this court has refused to apply the "plain error" doctrine to any case that does not involve the death penalty. See Thomas v.State, 622 So.2d 415 (Ala.Cr.App. 1992), cert. quashed,622 So.2d 420 (Ala. 1993). "In order to preserve the issue for appellate *Page 811 
review, objections are still required in 'capital cases' in which the death sentence is not imposed . . . Rule 45A, A.R.App.P., and the doctrine of plain error do not apply in cases in which the death penalty is not imposed."Thomas, 622 So.2d at 420. The appellant's objection to the state's line of questioning was never presented to the trial court; therefore, it will not be reviewed here.
 V
Last, the appellant contends that his trial counsel failed to afford him effective assistance of counsel. However, this claim is also barred from review because it was never presented to the trial court pursuant to the procedures outlined in Ex parteJackson, 598 So.2d 895 (Ala. 1992).
For the foregoing reasons, the appellant's convictions and sentences are due to be affirmed.
AFFIRMED.
All the Judges concur.